### W. W. Nelson v. H. C. Bridge et al.

No. 1381. Decided March 30, 1905.

**1.—Administration—Grant After Four Years.**

Articles 1880 and 1881, Revised Statutes, prohibiting the appointment of executors or administrators after the lapse of four years from the death, apply to an application for letters in Texas upon the estate of a non-resident, though merely ancillary to probate proceedings commenced before that time in the State of his residence. (Pp. 530, 531.)

**2.—Same—Jurisdiction—Administration Void or Voidable.**

The provision that administration shall not be granted after four years from the death, though mandatory upon the courts, is not jurisdictional, and does not render void an administration granted on application filed after such time. (Pp. 531-533.)

Questions certified from the Court of Civil Appeals for the First District, on error from Galveston County.

*Ewing & Ring* and *Bullitt & Louis,* for plaintiff in error.—The statute limiting the grant of administration to four years has no application to ancillary administration; but if it had, the disregard of such statute would not affect the court's jurisdiction, and hence could not render the administration void and open to collateral attack.

The proposition, as also the question certified, presents a double aspect, either phase of which is sufficient to sustain the validity of the administration; and hence, if either phase of the inquiry has been de-

cided by this court, the precedent will be sufficient for our purpose, without determining which phase was decided. Thus stated, the case of Henry v. Roe, 83 Texas, 446, is decisive in favor of the plaintiff in error.

But if the question were res integra, the same conclusion would have to be reached. Cogent reasons make it necessary to hold that an ancillary administration is not within the purview of the statute. It is true the statute might, without violence to its literal terms, be applied to both original and ancillary administrations; but its language, at the same time, will be amply satisfied if applied to original administrations alone. The obvious thought of the lawmaker was that, while the evidence was fresh and easily obtainable, the administration must be begun. The penalty of the remedy was no administration at all. Sayles' Civ. Stats., art. 1880. These considerations, it is apparent, can have little or no application to an ancillary administration, if the original was begun within the four years. The constitutional power of the probate courts, independent of the statutory provisions, to open and give effect to ancillary administration is indubitable. Axtell's Ann. Const., art. 5, secs. 16-22, pp. 59-72. It is by the Constitution provided, inter alia, that the "county courts shall have the general jurisdiction of a probate court," and that "they shall probate wills, grant letters testamentary and of administration." Indeed, it is not an open question, that ancillary administrations in this State practically rest, under the court's constitutional jurisdiction, upon principles of interstate comity, without the need or aid of express statutory provisions. Green v. Rugely, 23 Texas, 551, 552. We find it difficult to add anything to what is so learnedly said in the opinion in Green v. Rugely, supra, and to the opinion itself we invite the court's closest attention. Also forceful and persuasive in its analogy is the able discussion of a kindred subject by Justice Stayton, in Neal v. Bartleson, 65 Texas, 478, 482-486.

The doctrine ab inconvenienti is a forceful consideration of the position we take, and the instant case itself is an apt illustration of the grave injustice that may be done creditors of an estate if an auxiliary administration, such as the ancillary administration in question, can be defeated by the four years limitation prescribed by the statute invoked. The conclusion seems irresistible, from whatever point of view we regard the statutes, that the probate scheme was to limit original administrations to four years, but to prescribe no limitation as to auxiliary ones, and that this general scheme ought to be given effect as to ancillary administrations, in the silence of the statutes on that subject, so as to effectuate the probable legislative intent. The learned opinions in Storrie v. Street Railway Co., 92 Texas, 129, 144, and Russell v. Farquhar, 55 Texas, 359, are ample authority for this position. It is indisputable, too, that the texts on the subject draw no distinction where a statute by silence relegates the matter to judicial construction, but affirm generally that such bar periods are inapplicable to ancillary

or other auxiliary administrations. 11 Am. and Eng. Enc. of Law, 2 ed., 783; 13 Id., 928, citing authorities.

But if ancillary administrations were within the terms of the statute in question, it is submitted the requirement of the statute is not jurisdictional in the sense of rendering an administration void and open to collateral attack. The source of the court's jurisdiction was above the Legislature; it was the Constitution. Axtell's Ann. Const., art. 5, secs. 16-22, pp. 59-72. The principles applicable to the orders of our probate courts as courts of general jurisdiction are too well settled to justify elaboration. Their orders are open to collateral attack only when void, and they are void only when pronounced without jurisdiction. No nonobservance of law, statutory or unwritten, if not jurisdictional, will affect the validity of such orders, no matter how vital in consequence may be the error or irregularity. Templeton v. Ferguson, 89 Texas, 56, and cases cited. That the statute in question is in no manner jurisdictional is rendered practically certain by its terms. It expressly provides that if the application be made after four years, such application "shall be refused and dismissed." Sayles' Civ. Stats., art. 1880. Obedience to this mandate contemplates beyond doubt judicial action, which is utterly inconsistent with entire want of jurisdiction. Now, to refuse and dismiss the matter of an application is, we repeat, essentially judicial action, and the exercise of judicial action in such case, the rightful power to hear and determine, is itself jurisdiction, according to a familiar rule. Stewart v. Anderson, 70 Texas, 588. No erroneous exercise of this power, however irregular, could dislodge the lodged jurisdiction without violence to elemental law on the subject.

The statute relied on by adverse counsel provides that "all" administrations shall be opened within four years after the death of the testator or intestate. Sayles' Civ. Stats., art. 1880. They maintained on the hearing that the word "all" made the requirement apply to both original and ancillary administrations, while we maintained that it applied to all of the class to which it related, to wit, original administrations, and did not apply, in view of the context, the general probate scheme of the statutes, the purpose and reason of the enactment in the light of the former evil, to the other class; to wit, ancillary administrations. Our position is very forcibly illustrated by the pertinent language of Mr. Justice Brown, of this court, in his recent opinion in McGrady v. Terrell, 11 Texas Ct. Rep., 950-951.

The doctrine ab inconvenienti, in the interest of sound policy and justice, is a strong consideration in favor of our position, in view of the rule that the personal estate must be exhausted before resort can be had to the sale of land to pay debts, even though the debts be a lien on the land. Arnold v. Dean, 61 Texas, 249. Take the instant case for an illustration. It is provided by our statute that an application for administration, as a matter of legal but not jurisdictional requirement, shall show a necessity for administration. Sayles' Civ. Stats., art. 1888. The presumption is that the law of Louisiana is the same as ours con-

cerning the rule that resort must be first had to the personalty for the payment of debts of an estate. Burgess v. Western Union Tel. Co., 92 Texas, 127. It might well have happened in the instant administration, that the insufficiency of personal estate in the original administration at the domicile to pay the debts was not developed until more than four years after the death of the testator, up to which time no necessity for an ancillary administration upon the Texas lands could be shown. What is here said of the instant administration is equally applicable to any similar one.

*Masterson & Masterson,* for defendants in error.—The statute in article 1880 says all applications must be filed within four years, and if not filed in four years shall be refused and dismissed, and article 1881 says in no case shall letters issue where a will is admitted to probate after four years. In order to sustain the administration on the Bridge estate the court would have to legislate and say: "The term 'all' means some; 'must' has no meaning; 'shall' means nothing, and 'in no case' means in some cases." And article 1843, expressly providing for administration in Texas on estates of nonresidents, does not mean that such administrations in Texas are to be governed by the probate laws of Texas, but means that such estates are exempt from the operation of all the probate law except that one section. It is certainly the plain intention of the Legislature that our probate law shall be a complete system applying alike to all estates administered under it.

The laws of Texas govern the administration in Texas, and the fact that there was or was not an administration in some other State does not in any wise affect the estate in Texas. The estate in Texas is governed by the Texas statutes, and the administration in Texas must be opened within the time provided by Texas law.

The State statute does not recognize any administration in this State as "ancillary" to some other administration in some other State, but on the contrary expressly provides in article 1843 for administration on the estates of nonresidents without regard to whether the estate of the deceased in another State was or was not administered.

Articles 1926 and 1927, limiting the time within which letters may be granted to four years from the death of the decedent, each contain a proviso that the four years has no application where letters have been previously granted upon such estate by said court. Articles 1924, 1926 and 1927, construed together as parts of the same statute, manifestly limit the power of the court to grant letters to four years, except where, as the statute says, further administration is necessary in said court by reason of the death, resignation or removal of the administrator. Such further administration is the same administration in the same court, simply completing the work left unfinished by the administrator who died, resigned or was removed.

In order to sustain the contention of counsel this court would, by construction, say that the Legislature did not mean all estates in articles

1880 and 1881, though that language is used, and will exempt all estates where an administration has been opened in some other State. The logical result is that section 1924 is wholly unnecessary, and the last part of 1926 and 1927, excluding from the time limit of four years, estates where previous administration had been granted in the same court in which the original administration was opened and then pending, is meaningless.

The second question certified is: "If the sections 1880 and 1881 do apply, is the proceeding thereby rendered void and open to collateral attack?" To state this question as applied to the facts of this case: Did the probate court of Hardin County have power to divest the title out of the heirs by administration begun six years after the death of the testator, when the application for the letters and the order granting it both show that the testator died six years before the application was filed?

It can not be questioned that under the very language of the statute the title to the lands in question when Isaac Bridge died vested immediately in his devisees and heirs, and having vested in them it still remains in them, unless divested by some judgment authorized by law by a court having power or jurisdiction to divest the title out of them, and after due service of process on them.

Article 1880 (1827) provides that all applications for grant of letters testamentary or of administration upon an estate must be filed within four years after the death of the testator or intestate, and if four years have elapsed between the death of such testator or intestate and the filing of such application, such application shall be refused and dismissed.

Article 1881 (1828). No will shall be admitted to probate after the lapse of four years from the death of the testator, unless the party applying was not in default, and in no case shall letters testamentary be issued where a will is admitted to probate after the lapse of four years from the death of the testator.

Article 1884 requires that the application shall state the time and place of death and the facts necessary to show that the court has jurisdiction of the estate.

Article 1888 (1835) requires that application for letters of administration shall show the name of the deceased; that he is dead; the time and place of his death, and that he died intestate; the facts necessary to show that the court has jurisdiction of the estate; that a necessity exists for an administration, setting forth the facts which show such necessity.

Article 1926 provides that before granting letters testamentary it must appear: First. That the person is dead. Second. That four years have not elapsed since his decease prior to the application. Third. That the court has jurisdiction of the estate. The first three subdivisions of this article have no application when letters of administration on such estate have been previously granted in said court. Article 1927 (1874)

provides that before granting letters of administration it must appear: First. That the person is dead. Second. That four years · have not · elapsed since his decease prior to the application. Third. That the court has jurisdiction of the estate. Fourth. That there is a necessity for the administration.

The first three subdivisions of this article have no application when letters testamentary or of administration have been previously granted upon such estate by said court. If it is possible for the English language to express the Legislature's will, the above quoted sections, by express declarations repeated six times, express the intention of the Legislature not to confer on the court jurisdiction to grant letters testamentary or of administration after four years after the death of the testator or intestate, but it is contended that the court having assumed the power not conferred by law and directly excepted out of the power conferred, its order of sale divested the title out of the heirs or devisees which vested in them immediately on the death of the testator.

This construction is contrary to all elementary rules—it is equivalent to saying that the court can give itself jurisdiction, and need not look to the law for power to act; nay, more, it not only assumes jurisdiction without express grant of power, but it may exercise it when the Legislature by law says it shall not have the power. Such construction goes still further: the statute quoted says the title passed immediately to the devisees and heirs upon the death of the testator or intestate. To sustain the usurped power of the court, it must be held that this title which had vested in the heirs immediately on the death of the testator was divested out of them without service of process on them, without making them parties to any proceedings and at a time when the probate court was six times by statute forbidden to attempt to exercise such jurisdiction, and when this usurped power was brought into exercise on the application of a person in no wise interested in or connected with the estate of the testator, and when all of the facts necessary to show that the attempted administration is in direct violation of law, and expressly prohibited by it, appear in the application and in the order granting the letters. It would not seem necessary to cite authority to show that the proceedings in the probate court did not divest the title out of the heirs; but we will refer briefly to the adjudicated cases bearing on the question. Jones v. Taylor, 7 Texas, 244; Hearn v. Camp, 18 Texas, 551; Finch v. Edmonson, 9 Texas, 514.

To support the adverse claim, it is necessary: 1. To hold that the proabte court of Hardin County has jurisdiction over all estates at all times, and the Legislature is powerless to fix any limit to it. 2. That after any period of time, administration may be opened by any stranger,· not interested in the estate, based on a claim that all the courts decide can not be made the basis of a claim against an estate, and the property be sold to satisfy an illegal and barred claim, and the title which passed to the heirs immediately on the death of the ancestor be divested out

of the heirs without service of process on them, when they are shown by the record not to be in Texas, and the only notice, if any, was given as a posted notice of the application stuck up at some cross road in Hardin County.

The heir who inherits an estate is not called upon to watch every cross road in every county in the State where his ancestor had land, after the period fixed by positive law as the time within which letters of administration may be granted, and as a penalty for failure to find such illegal notice, at a time when the law forbids its being given, to have his title divested to pay a claim which the law denounces as illegal. Withers v. Patterson, 27 Texas, 491, 499; Ryan v. Texas & P. Ry. Co., 64 Texas, 239; Ochoa v. Miller, 59 Texas, 460; Fisk v. Norvel, 9 Texas, 13; Blair v. Cisneros, 10 Texas, 34; Dodge v. Phelan, 2 Texas Civ. App., 447; Boyle v. Forbes, 9 Texas, 40; Lloyd v. Mason, 38 Texas, 213; Webster v. Willis, 56 Texas, 474; Marks v. Hill, 46 Texas, 350; Paul v. Willis, 69 Texas, 261; Harwood v. Wylie, 70 Texas, 538; Summerlin v. Rabb, 11 Texas Civ. App., 55; Wardrup v. Jones, 23 Texas, 491; Rogers Heirs v. Watson, 81 Texas, 403; Swearingen v. Williams, 67 S. W. Rep., 1061;; Gillaspie v. Murray, 66 S. W. Rep., 252; Silverman v. Landrum, 19 Texas Civ. App., 404.

WILLIAMS, ASSOCIATE JUSTICE.—Certified questions from the Court of Civil Appeals for the First District, as follows:

"In 1881 Isaac Bridge died testate in the city of New Orleans, La. In February of that year his will was duly admitted to probate in the court of that parish having jurisdiction of probate matters, and R. B. Bridge having been named as executor in the will was appointed and duly qualified as such. Deceased had no kindred in Texas, but died owning lands in Jefferson County of that State.

"In 1887 George C. O'Brien applied to the probate court of Jefferson County, Texas, for letters of administration with will annexed on the estate of Isaac Bridge situated in Texas. The written application set up the facts, disclosed the date and place of decedent's death, the pendency of the proceedings in Louisiana, tendered a certified copy of the will for probate, and alleged a necessity for administration in this State.

"The application was promptly granted and O'Brien was duly appointed and qualified. He applied for an order for the sale of the lands of the estate in this State for the purpose of paying the debts of the estate. The order was granted and the lands thereafter sold, the sale confirmed and deeds executed by O'Brien to the purchaser.

"The date and place of the death of deceased was disclosed both by the application for letters and the decree granting them to O'Brien.

"This suit was brought by W. W. Nelson against the heirs of the deceased Isaac Bridge to recover the lands thus sold. Nelson, the plaintiff, holds title under the purchaser from O'Brien as administrator. The

defendants contend among other things that the Texas administration was void because the application and order showed the letters were granted more than four years after the death of the testator, in direct contravention of articles 1880 and 1881 of the Revised Statutes.

"Among other things urged in support of his title Nelson contends that the probate proceeding in Texas is valid because the Texas proceeding was ancillary to the original proceeding in Louisiana, and therefore does not fall within the provisions of articles 1880 and 1881 of the Revised Statutes, requiring such applications to be filed within four years. That if, however, the statutes do apply, the provision is not jurisdictional, hence the proceedings are not void and can not be collaterally attacked.

"We certify for your decision the questions:

"First. Do articles 1880 and 1881 apply to the Texas administration above set out?

"Second. If so, is the proceeding thereby rendered void and open to collateral attack?"

Article 1880 of the Revised Statutes provides as follows: "All applications for the grant of letters testamentary or of administration upon an estate must be filed within four years after the death of the testator or intestate, and if four years have elapsed between the death of such testator or intestate and the filing of such application, such application shall be refused and dismissed," etc. The article makes an exception which need not be stated.

Article 1881 is as follows: "No will shall be admitted to probate after the lapse of four years from the death of the testator, unless it be shown by proof that the party applying for such probate was not in default in failing to present the same for probate within the four years aforesaid, and in no case shall letters testamentary be issued where a will is admitted to probate after the lapse of four years from the death of the testator."

In the case of Henry v. Roe, 83 Texas, 450, in an opinion by the Commission of Appeals, it is said: "Both of these statutes relate to original actions in granting letters in this State;" but the eminent judge who wrote the opinion seems not to have been well enough satisfied with this proposition to rest the judgment upon it and proceeded to decide also the second question certified, which would not have arisen in that case had the first been definitely disposed of by the short expression which we have quoted. We are unable to find in the statutes any satisfactory reason for limiting the meaning of the comprehensive language of the statute and holding that the words "all applications" and "in no case" do not include such applications as are first made in this State after letters have been issued in another State. Such general words are sometimes found, either from other language of a statute or from its history, to have been intended in a sense less general than that which they ordinarily express, but such a restricted meaning should be ascertained from the legislation itself before the courts are justified

in applying it. There is nothing either in the other provisions of the laws regulating the subject, or in their scope and purpose, which would justify the court in saying that the Legislature meant by these provisions less than their language imports.

Articles 1880 and 1881 do refer to original applications in our courts, but all applications made to such courts for the first grant of letters in this State are original here, whether letters upon the estate of the same decedent in another State have been granted there or not. Those applications which our law treats as not original are specified and are such as are granted in some cases for the continuance of administrations already commenced. Arts. 1924, 2012. The probate law expressly includes, among the estates for the administration of which provision is made, those of nonresidents who died out of this State (art. 1843, subdivis. 3 and 4) ; and this excludes the supposition that, in fixing the time limit, the Legislature did not have in mind such estates. The same argument may be drawn from articles 1909 and 1922. The first provides for the probating, in this State, of wills which have been probated in another State, with no limitation as to time within which this may be done, but does not authorize the issuance of letters testamentary. The second provides that "when" a will has been probated and the executor has qualified in another State and such will and its probate have been filed and recorded in this State as provided, and "letters of administration have been granted by such court to any person other than such executor," such letters shall be revoked upon application by such executor and letters testamentary granted to him. Thus it appears that the law contains some express provisions concerning the class of cases to which this belongs, but in no way modifies, in their application to them, the provisions as to the time limit. The one authorizes the probate of the will merely, and the other authorizes the revocation of letters of administration previously granted and the substitution of the named executor as the representative of the estate. But article 1881 says that "in no case" shall letters testamentary issue after four years, etc., and, as counsel for defendant in error well says, the application of O'Brien was one case, and a case expressly referred to for some purposes in other parts of the statute and not excepted from the rule as to, limitation. If the decision in Henry v. Roe could only be upheld upon the first proposition it announces, respect for the rule, stare decisis, might induce us to follow it, but we find reason so much more satisfactory to sustain it upon the second proposition that we feel free to answer the first question in the affirmative.

2. In support of the position of defendants in error that the administration is void, it is argued that under the provisions of the probate law the title to the property of a decedent vests at his death in his heirs, or if he left a will, in his legatees and devisees; that this title is subject to be divested by administration only within the time prescribed by articles 1880 and 1881; and that after the lapse of that time the title becomes absolute and is no longer subject to the power of the probate

court. In this connection reference is made to a number of opinions of judges of this court, in which it is asserted that the time passing between death and an application for administration may be so great that the presumption will become conclusive that there exist no debts and no basis for administration; so that there is, in law, no estate to be administered and the property had become absolutely that of those entitled to take from the decedent and is beyond the power of the probate court. This doctrine was reviewed in the case of Martin v. Robinson, 67 Texas, 368, and it is there said that in all of the cases in which administration had been held to be void there existed other reasons for the judgments than the mere length of time between the death and the commencement of the proceeding. Whether it be true or not, that in some supposable case an administration might be adjudged void upon the sole ground stated, it is true that no decision of this court has held that delay such as that here in question by itself would be attended with such a consequence. The theory of the opinions referred to, that after a sufficient lapse of time there is a conclusive presumption of the non-existence or extinguishment of debts and of all justification for administration was not applied by the Legislature in adopting four years as the limitation for the commencement of proceedings; for, irrespective of administration, article 2089 expressly continues the charge of debts upon the property of heirs, devisees and legatees so long as the debts themselves are not barred "by the laws of limitation." The law does contemplate that debts shall be enforced either through administration opened within four years, or through other procedure after that time has elapsed without administration; but in either case the title of the heir, devisee or legatee is still incumbered so long as the debts have legal existence. Within four years, administration, and, after that time, suits in other courts of competent jurisdiction, are made the correct procedure; but are these regulations made so severely jurisdictional as to render void proceedings which disregard them? If the affirmative is true of the probate court, why is it not equally true of the district court? And if an administration to collect debts after four years is void, why would not a judgment of a district court enforcing a debt within four years, there being necessity for administration, be equally void? It is evident that we find no solution of the question and little aid through this theory; and that the decision must at last depend upon the inquiry whether or not the Legislature has made the *jurisdiction* of the probate court, in the strict sense, to grant a valid administration, depend upon lapse of time, and has made void all administrations opened more than four years after death; and this must be determined from the language of the statute. We find in the probate law provisions expressly relating to jurisdiction, and among them a declaration that specified administrations shall be void. Arts. 1840-1843. There is nowhere an affirmative declaration that the court shall not have jurisdiction after four years, nor that an administration granted after that time shall be void. All that the theory of nullity

rests upon is the positive and mandatory language of the statute, and this, in our opinion, is addressed to the probate court to control its action in the exercise of its jurisdiction and is not a denial of the jurisdiction. The strong character of the language used can not be regarded as having the latter effect, because the same statute abounds with like verbiage plainly intended, not as jurisdictional restrictions, but as rules prescribed to guide and control the court in its proceedings. In none of them, so far as we have found, is there any suggestion that action taken contrary to them shall be void, except in articles 2072 and 2073, in which the approval or allowance of claims without affidavit is prohibited, and, in this instance, the statute expressly declares, what would not otherwise follow, that such an allowance by the court should be of no effect. These specifications of the jurisdictional requirements, and express provisions making void certain proceedings, are powerful indications that other commands and inhibitions such as those in question were meant merely to control the court and direct its action upon the subjects treated, and not to remove those subjects beyond its power to act upon them at all. Article 1880 by its very language implies that judicial power is to be exercised by requiring the application to be "refused and dismissed." Statutes of limitation are of binding force upon courts in their proceedings, but they are rarely, if ever, made jurisdictional; and there is nothing in the character of those in question to require that an effect be given to them which the Legislature has not said they shall have.

Articles 1884, 1888, 1926 and 1927 prescribe the requisites of the applications and proofs in granting letters, one of which in each case is the statement of the time and place of the death, and another, separately stated, is "that the court has jurisdiction of the estate" which indicates that the first, although requisite to correct action, was not prescribed as jurisdictional.

In article 1882, immediately following those prescribing the time limit, we find this: "Where letters testamentary or of administration shall have once been granted, any person interested in the administration may proceed, after any lapse of time, to compel a settlement of the estate when it does not appear from the record that the administration thereof has been closed." Here is an express recognition of the validity of administrations to which the provision relates and of the power of the probate court over them, and if it applies to administrations opened four years or more from death, it is well nigh conclusive of the question before us. That it does so apply is rendered sufficiently evident by its history. The originals of articles 1880, 1881 and 1882 were sections 44, 45 and 46 of the probate law of 1870 (Pasch. Dig., arts. 5505, 5506, 5507), by which a time limitation upon the grant of administrations was first prescribed in this State. Those sections were as follows:

"Art. 5505. The administration of an estate must be commenced within four years after the decease of the testator or intestate, and not after.

"Art. 5506. The presumption is, after that time has elapsed, that there are no debts, or if any, that they are debarred by the statute of limitations, and that the property, if any, has gone into the possession of the person entitled to receive it. If the contrary be the fact, either the creditor, or the heir, or the State, if there be no heir, has a remedy in the district court.

"Art. 5507. But where letters testamentary or of administration shall have once been granted, no presumption is admissible which is contrary to the record, and the persons interested in the administration may proceed, after any lapse of time, to compel a settlement of an estate which does not appear from the record to have been closed."

From section 46 it is plain that the limitation was not allowed to affect the validity of administrations once opened. Section 45 and that part of section 46 concerning presumptions, were omitted from the probate law afterwards adopted as it now appears in articles 1880, 1881 and 1882. Two reasons for this are evident. (1) No such presumption as that mentioned in section 45 exists under the present law, and (2) the statements of such abstract principles with which the law of 1870, which was as much in the form of a treatise as of an ordinary statute, abounded, were all left out of the subsequent law. The limitation was preserved, and, in the same association with it, the essential provision of section 46 was re-enacted in the same language, and the conclusion is irresistible that it has the same meaning that it had in that law and was mainly intended to save the rights of persons under administrations actually opened and conducted, regardless of mere lapse of time. Our conclusion, from a careful study of the statutes, is that their purpose was the reverse of that contended for by defendants in error; that such purpose was to prescribe for the guidance of the probate courts a rule by which they might easily determine the time within which they should grant administrations, and, at the same time, by the provision of article 1882, to preserve from destruction rights depending on the acts of such courts, thus removing the doubt and uncertainty in which the subject had previously been involved. That article 1822 recognizes the validity of administrations to which it applies is evident, for upon no other theory could there be a settlement in the probate court; and that it applies to administrations opened after the time fixed is equally apparent from its history and connection.

The decision in Loyd v. Mason, 38 Texas, 212, was made upon an appeal from the order granting administration and does not conflict with our conclusion.

The case of Rogers v. Watson, 81 Texas, 403, in which it is said that "after the lapse of four years from the death of a person the probate court has lost its power to grant letters of administration," did not involve any such question as that now before us, but one as to the power of a trustee in a deed in trust to execute a power of sale more than four years after the death of the constituent of the power, no administration having in the meantime been granted on his estate. The remark meant

no more than that an administration could not be properly granted 'and that there was therefore no reason for applying for one in order to subject the property to the debt.  None of the authorities relied on decide the question of the validity of an administration granted under our statutes upon a person's estate more than four years after his death.

We conclude that the second question should be answered in the negative