**ROSS' ESTATE et al. v. ABRAMS et al. \***
(No. 6669.)

(Court of Civil Appeals of Texas. San Antonio. Jan. 18, 1922. On Motion for Rehearing, March 15, 1922.)

1. Wills ☞220—Contestant must be interested in estate.

One has no right to contest a will unless he is interested in the estate, either absolutely or contingently, as husband, wife, legatee, next of kin, heir, devisee, assignee, grantee, or otherwise, except as a creditor.

2. Wills ☞220—Persons claiming land but not as part of testatrix's estate could not contest will merely to forestall action of trespass to try title.

Persons claiming land, not as a part of testatrix's estate, but by adverse possession of execution sale purchaser, and who could be divested of title merely by a defect in the title under execution or the 40 years' limitations set up by them, could not contest will merely for the purpose of forestalling an action of trespass to try title to the land, since their interest in land would not be affected by the probate of the will.

3. Wills ☞260—Statute requiring will to be probated within certain period complied with by filing of application; "present for probate"; "probate."

Under Rev. St. art. 3248, providing that a will shall not be probated after a lapse of four years unless it be shown by proof that the party applying for such probate was not in default in failing to present the same for probate within the four years, the admission of a will to probate more than four years after deceased's death was not barred by limitations, where application was filed within the four-year period, since the words "present for probate" are synonymous with the words "file for probate," and since the "probate" of a will is the act or process of proving it and must be preceded by the presentation of the will to the court, which is done by filing an application.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Probate.]

4. Wills ☞309—Use to which will may be put after probate cannot be inquired into.

When probate of a will is sought, the use to which the will may be put after probate cannot be inquired into.

5. Equity ☞72(1) — Doctrine of "laches" stated.

"Laches" is not mere delay, but delay that works a disadvantage to another, and so long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within the limits allowed by law; but when, knowing his rights, he takes no steps to enforce them until the condition of the other party has in good faith become so changed that he cannot be restored to his former state, the delay becomes inequitable and bars the assertion of the right.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Laches.]

Appeal from District Court, Gonzales County; M. Kennon, Judge.

Application by Harriett Tennille Griffin and others to probate the will of Sarah Ross, contested by W. H. Abrams and others. Probate was denied in the county court, and on appeal to the district court a general demurrer to the petition and plea to the jurisdiction were sustained and the application was dismissed, and applicants appeal. Reversed and remanded, with instructions.

Rainboldt and Midkiff, of Gonzales, and Oliver J. Todd, of Beaumont, for appellants.

W. T. Miller, of Gonzales, Wilson & Woodul, Baker, Botts, Parker & Garwood, Stephen Pickney, and David M. Picton, Jr., all of Houston, and M. W. Townsend, of Dallas, for appellees.

FLY, C. J. On September 16, 1875, Joseph H. Clements applied to the distict court of Gonzales county to probate a will left by Sarah Ross, who was alleged to have died in September, 1872. Notice and citation was given as provided by law. No other action was taken in the matter except to continue it, in 1876, until January 17, 1921, when Harriett Tennille Griffin, Ann C. Tennille Clements, Fred Duderstadt, G. C. Duderstadt, T. A. Duderstadt, F. E. Duderstadt, F. R. Caffall, Annie Caffall Davenport, T. W. Caffall, Stella Caffall Louwein, Nancy P. Elkins, Ernest C. Caffall, Thomas C. Tennille, and Mrs. S. J. Clements, joined by her husband, J. H. Clements, filed an application to probate the will of Sarah Ross, setting up the statutory matters and alleging that in 1875 J. H. Clements had filed an application to probate the will of Sarah Ross, and that the same now stands undisposed of in the probate court, and that, although the estate has been administered, they desired to probate the will as a muniment of title, and that the residuary legatees under the will were T. C. Tennille and his five sisters, Mrs. Griffin, Mrs. Ann Clements, and Mrs. S. J. Clements and the ancestors of the Duderstadts and Caffalls, all of whom were applicants for probate of the will. Coverture of all the sisters and the fact that they believed that J. H. Clements had probated the will were also alleged. Due notice of the application was given and on February 21, 1921, W. H. Abrams, Harold Abrams, and Lucian Abrams filed a contest of probate of the will. On June 1, 1921, another contest was filed by the three Abrams, the Texas Company, Will C. Hogg, Tom Hogg, Mike Hogg, and Ima Hogg. In that contest exceptions to the probate of the will were made because the petition therefor failed to show that there was a pending proceeding to probate said will, but, on the other hand, show that no proceeding was pending, but that it had long since lapsed and had been dismissed, and

further that the petition showed that the will had been filed for probate by J. H. Clements on September 16, 1875, citation had been duly issued and served, and no orders had been issued in the proceeding except an order of continuance in September, 1876, and that no steps had been taken to probate the will except an attempt to take the deposition of a witness to the will, and that the probate of the will had been abandoned by Clements.

The exceptions are followed by 13 pages of typewritten matter setting forth grounds of contest of the will, the substance of which is that contestants are interested in the will, are innocent purchasers of their lands; that about 1830 one George Tennille, a colonist, obtained a grant from the Mexican government of a league of land in Brazoria county, Tex., which is known as the George Tennille league; that said Tennille was married to Sarah Tennille, who, after his death in 1850, married again and became the Sarah Ross, who executed the will which is being offered for probate; that a certain judgment was rendered against George Tennille, and 2,250 acres of the league of land sold thereunder to Ammon Underwood, who took possession of the land and held it for 40 years; that he sold 355 acres of the tract to Mrs. Jane Kaiser, and it was afterwards purchased by James S. Hogg, and after his death became the property of his heirs, herein named as contestants, and other portions of the Underwood land passed through regular transfers to other contestants. It was further alleged that Mrs. Ross had one son, George C. Tennille, who was her sole heir; that upon her death he took charge of her estate and claimed it as his own; that he died in Gonzales county, in 1874, leaving a will which was duly probated, which left his son, Thomas G. Tennille, his residuary legatee of all the lands owned by the testator. It was further alleged that with the full knowledge that, if the will of Sarah Ross was not probated, her property would be inherited by her son, George C. Tennille, the applicants permitted the proceedings for probate of her will to lapse and abandoned the same and permitted Tom C. Tennille to probate the will of George C. Tennille and take possession of his father's estate and exercise the rights of ownership over the lands in Brazoria and to part with title to portions of the same.

This is a resume of the original proceedings, but the cause was tried on a second amended application and a first amended original contest which consists of 16 typewritten pages setting up practically the same grounds of contest as those embodied in the original contest. Probate of the will was denied in the county court, and on appeal to the district court a general demurrer to the petition and plea to the jurisdiction were sustained, and the application to pro-bate the will of Sarah Ross, deceased, was dismissed.

Appellants filed a motion to require the appellees to show such interest in the estate of Sarah Ross, deceased, as would entitle them, under the statute, to contest the probate of the will of the testatrix, and prayed that the contest of the probate of the will be stricken out. That motion was overruled and that action is assigned as error. That appellees claim no title to any of the estate of Sarah Ross is admitted by them, their interest being only in the land which was sold under execution during the lifetime of George Tennille, at some time between 1830 and 1850, Tennille having died in the last-named year. The allegations go to show that George Tennille, during his lifetime, never set up any claim to the land sold under execution, and that the execution purchaser entered into possession and held the land for 40 years. No claim to the land was ever set up by Sarah Ross, and under the allegations of appellees there could be no basis for any claim that it was a part of her estate. If the allegations of appellees are true and correct, the land claimed by them could not possibly be any part of the estate of Sarah Ross, and the allegations of contestants indicate that their contest is to forestall an action of trespass to try title to their land now pending in Brazoria county.

[1, 2] No person has the right to contest the probate of a will unless he is interested in the estate, and, as said by this court in the case of Vidaurri v. Bruni (Tex. Civ. App.) 156 S. W. 315:

"The expression, 'person interested,' as used in the statute, includes only him, who either absolutely or contingently is entitled to share in the estate or the proceeds thereof, as husband, wife, legatee, next of kin, heir, devisee, assignee, grantee or otherwise, except as a creditor."

Appellees fail to bring themselves within the list of persons, for according to their pleadings their property could not possibly be any part of the estate of Sarah Ross and upon their pleadings they must stand or fall. They stand in no better position than did Bruni in the cited case, who claimed to have bought the land claimed by legatees. A writ of error was refused by the Supreme Court in that case, and the holding as to Bruni not being a person interested in the estate was necessarily approved. As said of Bruni, so it can be said of the contestants of the probate of the Ross will:

"Under his pleadings; he is not interested in the estate of testatrix, and claims nothing therein, but under the guise of contesting a will he is actually prosecuting an action of trespass to try title to the land."

This fully appears from the allegations of the contestants. The probate of the will, under the allegations of the contestants, can-

not affect their interest in the 2,250 acres of land sold before the death of George Tennille in 1850. Their interest at the greatest is the possibility that appellants might recover the land, such possibility resting on the possibility that there is a defect in the title under execution or the 40 years' limitation set up by them. As said in quotation made by appellees from 40 Cyc. p. 1242:

"While it is declared that any interest, however slight, is sufficient to authorize one to oppose probate, the interest must be one, and something more than an indirect and contingent interest, or a possibility dependent on a possibility."

Appellees have no interest in the estate of Sarah Ross, but an interest in defeating a suit for land which they clearly show was no part of the estate, and which Sarah Ross never claimed. As said in the same quotation from the Cyclopedia of Law and Procedure, contestants must be able to show some interest which will be affected and concluded by the probate of the proposed will. They do not show this. Appellees do not claim as heir, devisee, or legatee under the will and show no connection with it. They have purchased nothing from any devisee, legatee, or heir of Sarah Ross. How the will may be used after it has been probated can have no influence as to whether it should be probated. Appellees do not claim any land that belonged to the estate, and they should not be permitted to prevent appellants from perfecting a will which is an essential link in their title to land owned by Sarah Ross, and land in which appellees have no conceivable interest. The contest should have been stricken from the docket and appellees dismissed from the court.

Under the law, as applied to wills, which was passed in 1870 and was in effect in 1875, it was required that administration under a will must be commenced within four years after the decease of the testator and not after Paschal's Dig. art. 5505. In order that there might be no doubt as to what is meant by commencement of administration, it is provided that—

"Where the deceased left a will, administration is commenced by written application to the court of the proper county, in term time or vacation for probate of the will and letters testamentary or of administration." Paschal's Dig. art. 5532.

Clearly, under that law, the probate of the will of Sarah Ross was commenced in 1875, and under that law the necessary testimony to probate the will was filed before the expiration of the four years from the death of Sarah Ross. Article 5536.

Under the law of 1876 the county court was organized as a probate court, and it was provided therein that in order to obtain letters testamentary it must appear, among other things, that "four years have not elapsed since his decease prior to the application." Section 2, p. 93, Acts of 1876.

[3] Again, in article 3248 of the Revised Statutes of Texas it is provided that no will shall be admitted to probate after the lapse of four years from the death of the testator, unless it be shown by proof that the party applying for such probate was not in default in failing to present the same for probate within the four years aforesaid; and in no case shall letters testamentary be issued where a will is admitted to probate after the lapse of four years from the death of the testator.

Conceding that the last-named statute applies to the probate of the will of Sarah Ross, deceased, there is nothing in the article cited which would prevent the probate of the will, under the four years' statute of limitation, because it clearly appears that the will was presented for probate about three years after the death of the testatrix. We cannot accede to the contention of appellees that "to present" used in the statute is synonymous with offering proof to probate the will or in other words the trial of the cause. We are of opinion that it is more reasonable, and more in consonance with the rest of the article to construe "present for probate" as being synonymous with "file for probate." The offering of the proof for probating the will is not a presentation of it for probate any more than the presentation of a bill of exchange would be the acceptance or payment of it. The very language of the statute draws a distinction between "to present for probate" and the admission to probate. The presentation to probate precedes admission to probate. "Probate" is "the act or process of proving a will," and it must be preceded by the presentation of the will to the court, which is done by filing an application that they will be admitted to probate with the clerk of the county court of the proper county. Webster's Dictionary, Edition of 1920, gives as a definition of "present," as a verb:

"To lay before, or submit to, a person or body for consideration or action; as to present a memorial, petition or indictment."

That is clearly the sense in which it is used by the Legislature in connection with the application for probate of a will. Filing in court was presenting it to the court, and it became the duty of the clerk to place it on the docket, and of the county judge to take action in regard to it. We hold that the will was presented for probate to the district court in 1875, with the evidence upon which it could have been probated.

The district court sustained a general demurrer and a plea to the jurisdiction of the district court to probate the will, and it is stated in the judgment that—

"The court is of the opinion that the said

plea to the jurisdiction directed to the authority of the probate court to enter an order of probate in the old probate court proceeding No. 870, filed in 1875, should be sustained, and it is so ordered and decreed, to which the proponents except; and the court is also of the opinion that the general demurrer directed to the application, whether regarded as the continuation of said old suit or a new action filed, should be sustained."

The court undoubtedly had jurisdiction to probate the will, unless such jurisdiction was lost by the lapse of time. While the statutes in regard to the administration of estates under wills provide that the failure to do or perform certain things shall render the proceedings null and void, in no part of the statutes is it provided or intimated that a failure to present a will for probate in four years or to have it probated in a certain length of time after it has been presented should prevent the will being probated. On the other hand, it seems to be contemplated, in the very article providing for the four years' limitation, that wills may be probated after four years from the time that they are presented for probate, for it is provided in the last part of article 3248 that—

"In no case shall letters testamentary be issued where a will is admitted to probate after * * * four years from the death of the testator."

There could be no reason for such a provision if it had not been contemplated that wills might be probated after four years. This position is fully sustained by the Supreme Court of Texas, through an opinion by Judge Williams in answer to a certified question from a Court of Civil Appeals, in the case of Nelson v. Bridge, 98 Tex. 523, 86 S. W. 7. The court said:

"We find in the probate law provisions expressly relating to jurisdiction, and among them a declaration that specified administrations shall be void. Articles 1840–1843. There is nowhere an affirmative declaration that the court shall not have jurisdiction after four years, nor that an administration granted after that time shall be void. All that the theory of nullity rests upon is the positive and mandatory language of the statute, and this, in our opinion, is addressed to the probate court to control its action in the exercise of its jurisdiction and is not a denial of the jurisdiction. The strong character of the language used cannot be regarded as having the latter effect, because the same statute abounds with like verbiage plainly intended, not as jurisdictional restrictions, but as rules prescribed to guide and control the court in its proceedings. In none of them, so far as we have found, is there any suggestion that action taken contrary to them shall be void, except in articles 2072 and 2073, in which the approval or allowance of claims without affidavit is prohibited, and, in this instance, the statute expressly declares, what would not otherwise follow, that such an allowance by the court should be of no effect. These specifications of the jurisdictional requirements,

and express provisions making void certain proceedings, are powerful indications that other commands and inhibitions such as those in question were meant merely to control the court and direct its action upon the subjects treated, and not to remove those subjects beyond its power to act upon them at all. * * * Statutes of limitation are of binding force upon courts in their proceedings, but they are rarely, if ever, made jurisdictional; and there is nothing in the character of those in question to require that an effect be given to them which the Legislature has not said they shall have."

That decision fully establishes the validity of the probate of a will presented for probate more than four years after the death of the testator.

It was held that, under proper circumstances, a will might be probated after the expiration of four years, in the case of Ochoa v. Miller, 59 Tex. 460. That case was followed in the case of Ryan v. Railway, 64 Tex. 239, and it was held that a will executed by a testator who died in 1871 could be probated in 1882 as a muniment of title. In that case it appeared that the will had been presented for probate in 1871 and the proceedings dismissed by a compromise between the parties which was not carried out by Daggett, one of the parties. The court held:

"There is nothing apparent in the facts of this case to render the diligence of the plaintiff essentially indispensable in proceeding promptly, or at an early period, in order to obtain the probate of the will."

There was no stronger reason nor more equities presented in that case for a failure to press the probate of a will on file in the county court than in this, where all parties having an interest in the lands of Sarah Ross and George C. Tennille had agreed to proceed no further in the probate of the two wills of Mrs. Ross and Tennille.

In the case of Franks v. Chapman, 61 Tex. 583, an attempt had been made to probate a will, but it had not been legally probated; but the Supreme Court, through Judge Stayton, held that the will was before the court from the time the proceeding to probate was instituted and that it could be lawfully probated more than five years after the death of the testator. To the same effect is Elwell v. Universalist Convention, 76 Tex. 514, 13 S. W. 552. These cases effectually dispose of the contention that presenting a will for probate means obtaining the order of the court as to probate.

[4] In the case of St. Mary's Orphan Asylum v. Masterson, 57 Tex. Civ. App. 646, 122 S. W. 587, this court held that parties might probate a will as a muniment of title, if not in default, regardless of what their motives may be in obtaining the probate, which disposes of appellees' complaint that the probate is sought, of the will of Sarah Ross, in order to strengthen a case that appellants have against them in Brazoria county. When

probate of a will is sought, what use the will may be put to after probate cannot be inquired into. However, if the allegations in the contestants' pleadings are true, the proponents could not possibly have any interest in the lands owned by the contestants through the will of Sarah Ross. Their allegations are that about 1830 George Tennille was granted a league of land located in Brazoria county; that he was a married man and the league became the community property of the man and his wife; that, about 1840, 2,250 acres of the league were sold under execution and were bought by Ammon Underwood; that for 40 years thereafterwards Underwood exercised actual ownership over the land; that George Tennille made no claim to any part of the 2,250 acres of land, although he lived for 10 years after the sale. He died in 1850, and his wife, Sarah, afterwards married one Ross, who died before her death in 1872. She at no time during the 22 years from 1850 to 1872 made any claim to the land. That Underwood, in 1854, sold 355 acres of the land to one Allsworth, and that tract passed from Allsworth to Jane Kaiser and then to James S. Hogg and then to his heirs. The remainder of the tract was sold in 1888 to the Land Mortgage Bank of Texas, and afterwards, in 1901, sold by it to the Abrams. When the 2,250 acres of land was sold in 1840, there remained in the George Tennille league 2,178 acres of land which he and his wife owned when he died in 1850. Upon his death the 2,178 acres, in the absence of a will, passed to his wife, Sarah, and his son, George C. Tennille; 1,089 acres to each of them. If that condition prevailed up to the time of the death of George C. Tennille, then his son, Tom C. Tennille, could have set up a claim to a part of the 2,250 acres of land as a residuary heir of his father, without reference to his grandmother, Sarah Ross, as is alleged by appellees. The allegations are that Tom C. Tennille claimed only the land owned by the Land Mortgage Bank of Texas, and the suit did not affect in any way the 355 acres owned by James S. Hogg. Under the allegations the bank had parted with its title to the land and had no interest in it in 1904, when sued by Tom C. Tennille, but the deed by Tennille was made to the bank. Evidently the allegations show Tom Tennille was not acting under the will of George C. Tennille, but by reason of an agreement between all the heirs, which agreement was alleged in the petition for probate. It is further alleged that the agreement was made between Amanda J. Tennille, surviving wife of G. C. Tennille, and her son-in-law, J. H. Clements; that neither the will of Sarah Ross nor of George C. Tennille should be probated and the agreement was made without the knowledge or consent of several of the contestants who were young and ignorant of wills and who did not know that one was in existence until Abrams sought to probate the George C. Tennille will in 1920.

The pleadings show the youth and ignorance of at least a portion of the heirs of Sarah Ross, and they are shown to have had no knowledge of the existence of the will. The mere formal notice of the application to probate the will can, under a proper showing, be shown to have never actually come to their notice, and can be shown as an excuse for delay in pressing a probate of the will, which had not been concealed but placed on file in the proper court. In the case of House v. House, 222 S. W. 322, relied upon by appellees, the case as to probating the will was heard by the court, and the Court of Civil Appeals held that the trial court was justified in ruling that the proponent of the will knew of its existence and failed for 13 years to press the probate of it. She did not offer it for probate during the 13 years. That case was decided upon the facts, as the one we are considering should have been decided. While in that case it was held that coverture could not be used as a full defense to a charge of default in asking for a probate of the will, yet coverture "might be looked to as a circumstance tending to excuse her delay." The case of Pierce v. Farrar, 60 Tex. Civ. App. 12, 126 S. W. 932, cited by appellees, has no bearing on this case. Some of these appellants claim total ignorance of the existence of the will, and no one is claiming title to the property of Sarah Ross except proponents of her will, and their default, if any, cannot, so far as the pleadings show, affect the rights of any one.

[5] As said by Pomeroy on Equity, vol. 5, § 1442:

"Laches, in legal significance, is not mere delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within the limits allowed by law; but when knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right."

Appellees claim that the equitable principles stated are applicable in this case, and, if so, they are to the benefit of appellants. See, also, Spalding v. St. Joseph's School, 107 Ky. 382, 54 S. W. 200. In a number of the cases relied upon by appellees, to show that it would be inequitable to allow the probate of a will after a long lapse of time, the cases turned on the fact that the wills sought to be probated had been concealed for so long a time that a suspicion arose as to their genuineness, and in the cited case of Gordon v. Old, 52 N. J. Eq. 318, 30 Atl. 19, where a will had not been produced for 13 years after the death of the testator, it was only

held that the will should not be admitted to probate on mere formal proof.

Appellees claim to be innocent purchasers for value of the land they claim out of the Tennille league, which may be true; but they totally fail to show that they are purchasers from the estate of Sarah Ross, but, on the other hand, they show by their pleadings that whatever interest Sarah Ross had in their land was divested out of her over 80 years ago and that she nor her husband, George Tennille, ever had claimed any interests in the land since 1840, and the only way in which they claim to have any interest in the estate is by setting up a deed to a part of them from an heir to George C. Tennille, who claimed the land through him. That heir under the allegations could not be connected with Sarah Ross in his claim to the land under George C. Tennille, except by destroying the will of Sarah Ross which they are attempting to do. By the clear-cut manner in which contestants have shown in their pleading that Sarah Ross did not have nor claim any interest in their land, they have pleaded themselves out of court. Under the facts pleaded by them, she could not have had any claim to the land, and consequently contestants could not have any interest in her estate.

To recapitulate, we hold that contestants, appellees herein, have by their contest clearly shown that they have no such interest in the estate of Sarah Ross as would authorize them to contest the probate of her will; second, that the county court, and consequently, on appeal, the district court, had jurisdiction to hear and determine the application for probate of the will for the purposes of a muniment of title; and, third, that the application of proponents of the will was not subject to be assailed by a general demurrer, but was sufficient to form a basis for the introduction of testimony by the proponents.

The judgment will be reversed, and the cause remanded, with instructions to the district court to dismiss the contest of appellees and proceed to hear testimony as to the probate of the will and render such judgment as the evidence will justify under the law herein contained.

Reversed and remanded, with instructions.

## On Motion for Rehearing.

We adhere to our former judgment reversing the judgment of the lower court, which sustained and dismissed the application of jurisdiction and dismissed the application of appellants to probate the will of Sarah Ross, and also overruled their motion to require appellees to show such interest in the estate as to authorize appellees to contest the said will; but it will be so modified as to instruct the trial court to proceed to hear testimony not only as to the probate of said will, but also as to the question of appellees having such interest in such estate as would entitle them to contest the probate of the will, and to render such judgment as the evidence may justify under the law as given in this opinion.