J. K. ELWELL AND H. S. VAN HEIST v. THE UNIVERSALIST
GENERAL CONVENTION.

No. 2862.

1. **Probate of Will—Jurisdiction—Parties.**—On an appeal to the District Court from the action of the Probate Court in probating a will the case is tried *de novo,* and the District Court may dismiss the party who originally made application for probate, and proceed in the case at the instance of a legatee under the will, or of any one interested in the estate.

2. **Limitation.**—When a will is not under the control of the party who seeks its probate, nor in the proper place for its deposit, but in the possession of one who resists the application to probate it, the four years statute of limitations does not apply, but it may be admitted to probate after the expiration of that period.

3. **Cases Cited and Reviewed.** — Ochoa v. Miller, 59 Texas, 462; and Ryan v. Railway, 64 Texas, 241, cited and reviewed.

4. **Probate of Will—Fact Case.**—See opinion for facts under which it was held that proceedings to probate a will, made by the testator who died on January 1, 1883, which were begun in the name of a trustee for the beneficiary within four years, could

be prosecuted by the beneficiary after the expiration of four years from the death of the testator.

5.   **Foreign Corporation—Will.**—A foreign corporation can in New York take under a will, and a will made by one dying in Texas which makes a New York corporation a legatee may for that purpose be probated in Texas.

6.   **Construction of Will.**—A bequest to a corporation in its original corporate name "and to its successors and assigns" sufficiently identifies as a legatee the same corporation known at the time of the bequest by a different corporate name which it had received by amended charter.

7.   **Evidence—Probate of Will.**—Though a will may be probated by other witnesses than those who subscribed as witnesses thereto, when the latter are dead, beyond the jurisdiction of the court, or unwilling from corrupt motives to give evidence, yet the failure to call the subscribing witnesses must first be accounted for. When the subscribing witnesses have testified, other evidence secondary in its character may be admitted. The evidence of an attorney who drafted the will at the request of the testator, identifying it and showing the sanity of the testator, is admissible.

APPEAL from Galveston.   Tried below before Hon. Wm. H. Stewart. The opinion states the case.

*Wharton Branch* and *Howard Finley,* for appellants. — 1. Application for the probate of a will may be made by the testamentary executor or any person interested in the estate of the testator, and when made by any other person is an act forbidden by law, and is void.   Rev. Stats., arts. 1842, 1873, 1831, 1861, 1851; Price v. Wiley, 19 Texas, 143, 144; Henderson v. Kissam, 8 Texas, 53, 54; 1 Dan. Ch. Pr., 466; Story's Eq. Pl., secs. 882, 904, 905; 1 Dan. Ch. Pr., chap. 6, sec. 8; 26 Texas, 614; Williams v. Randon, 10 Texas, 80; The Governor v. Burnett, 27 Texas, 37; 8 Texas, 436.

2.   The voluntary nonsuit of the plaintiff puts the case out of court, and a different party attempting to appear as plaintiff is in no better shape than if he had intervened before the nonsuit.   He has no standing in court alone in this sort of case.   Clark v. Hopkins, 34 Texas, 139–142; McFadin v. MacGreal, 25 Texas, 79; Heard v. Lockett, 20 Texas, 163.

3.   The Universalist General Convention should have commenced their suit in the County Court and had citation issued thereon and served as required by law.   Mason's application as an intruder in other people's estates where he was forbidden by law to meddle, is a wrong that is not cured by a second wrong to allow the Universalist General Convention to begin their proceedings in the District Court.   Rev. Stats., arts. 1827, 1828, 1830, 1831, 1832, 1836, 1837, 1841, 1842, 2207, 2208, 1118, 1188; Ragland v. Wisrock, 61 Texas, 391–97; Koschwitz v. Healy, 36 Texas, 667; Story's Eq. Pl., sec. 904; 1 Ct. App. C. C., sec. 106; Newton v. Newton, 61 Texas, 511; McLean v. Paschal, 62 Texas, 102–105; Franks v. Chapman, 60 Texas, 46.

4.   Limitation runs against a party until he commences his suit,

whether he begins by intervention or as original plaintiff. Rev. Stats., arts. 1827, 1828.

5. The question of the right or power of the Universalist General Convention to maintain their application and to take by devise, should have been settled before objectors should be forced to trial on the merits. Newton v. Newton, 61 Texas, 512–14; Davenport v. Hervey, 30 Texas, 327; Bank v. Simonton, 2 Texas, 539–41; Holloway v. Railway, 23 Texas, 467, 468; Holliman v. Rogers, 6 Texas, 97; 2 Story's Eq. Jur., secs. 1157, 1158, 1183, 1194.

6. The corporation must show that the law of its creation gave it authority to make such contracts as those it seeks to enforce, etc. The exercise of the corporate franchise can not be extended beyond the letter and spirit of the act of incorporation. Ang. & Ames on Corp., 5 ed., pp. 102, 103, 147, 148, 166, 168; 4 Kent, p. *507; Wright v. Methodist Church, 1 Hoff. Ch. Rep., p. 225.

7. The execution of the will should have been properly proved by the applicant before allowing it to go in evidence to the jury. Rev. Stats., arts. 4857–59; Moss v. Helsley, 60 Texas, 436, 437; Philleo v. Holliday, 24 Texas, 42; 1 Redf. on Wills, 217–20, 75–79, 85–87, 93, 97, 113, 114, 125, 126, 143–45.

8. The will must be proved by the subscribing witnesses, by testifying that Bilderback had signed it before they signed, and that they either saw him sign or heard him acknowledge the signature to be his act, and the execution of it in this case could be proved in no other way. Rev. Stats., arts. 1847, 1851, 4859; 1 Greenl. on Ev., secs. 67, 568, and notes; 2 Greenl. on Ev., 676, and notes; 1 Jarm. on Wills, 5 Am. ed., p. 524, subdiv. f.

*Wheeler & Rhodes,* for appellee. — 1. The application for the probate of this will was made by a party interested in the estate, to-wit, the Universalist Church, through its executive trustees, by amended charter styled "The Universalist General Convention," sole legatees under this will. The original application for the probate of the will, and all amendments, clearly show that Sanford Mason was but a nominal party, and that the application was made for the sole benefit and in behalf of the only party in interest, this religious corporation. The original and all amendments recite and clearly show this, and as this church was a nonresident corporation, it was eminently proper that some responsible person should appear for it.

Had the original proceedings been had solely by and in the name of Sanford Mason, there would have been no error in permitting the real party in interest by amendment to become a party; and this in no manner changes or affects the nature of the proceedings, particularly so when it does not appear in what manner the rights of appellants could be or

have been impaired, or that they have been deprived of any defense by this proceeding.   Frank v. Kaigler, 36 Texas, 305; Heard v. Lockett, 20 Texas, 162; Price v. Wiley, 19 Texas, 143; Martell v. Somers, 26 Texas, 551; Smith v. Wingate, 61 Texas, 55.

2.   There was no new suit or nonsuit, voluntary or otherwise; no substitution of a new cause of action.   As shown by the record, the true relation of Mason, that of nominal party acting for the interest and in behalf of the Universalist Church, sole beneficiary under the will, is manifest. The most that can be truthfully said is that there was a change of the parties plaintiff from the nominal or trustee to that of the real party in interest, which has always been admissible under our practice.   Price v. Riley, 19 Texas, 143.   There was no error in permitting the amendment. Martel v. Somers, 26 Texas, 558; Smith v. Wingate, 61 Texas, 55;   Heard v. Lockett, 20 Texas, 162; Frank v. Kaigler, 36 Texas, 305.

3.   To prove the execution of the will, applicant placed two of the subscribing witnesses on the stand, although there were three to the instrument.   It was not necessary to have taken the evidence of all, nor two; "one of the subscribing witnesses" was sufficient under the statute. Rev. Stats., art. 1847.

4.   The Act of the Legislature of the State of New York of the date of the 4th of December, 1827, is not the law of that State upon this subject, and had not been since April 12, 1848.   Under the Act of April 12, 1848, and still in force, such corporations are capable of taking, holding, and receiving real and personal estate by virtue of any devise or bequest contained in any last will and testament of any person whatsoever.

5.   It is not necessary that the witnesses should actually see the testator sign his name—the statute does not require this—but that the witnesses shall subscribe their names in the presence of the testator.   The signature of Bilderback appearing upon the face of the instrument in due form in its proper place, as if signed before the witnesses; the genuineness of the signatures being undisputed; the instrument acknowledged to be his will in the presence of and to both witnesses; the will within two days after its subscription by the witnesses unquestionably having the testator's signature on it, as also those of the three subscribing witnesses, and each in its proper place; on his deathbed the testator produces this identical paper, says it is his will, handed it to his trusted friend, requested him to have it probated and its provisions carried out— the law from these circumstances will presume it was properly signed. Rev. Stats., arts. 1847, 4859; 1 Red. on Wills, 4 ed., chap. 6, sec. 19; 2 Greenl. on Ev., 4 ed., secs. 675, 676; Schoul. on Law of Wills.

COLLARD, JUDGE.—The statute provides that when an application for the probate of a written will together with the will itself is filed with the clerk, he shall issue citation to all parties interested in the estate,

which citation is required to be served by posting at least ten days before the first day of the term of the court to which such citation is returnable. Rev. Stats., arts. 1836, 1837.

The notices required were issued and posted upon the application of Sandford Mason to probate the will of R. T. Bilderback, and before any action was taken appellants Elwell and Van Heist appeared, objecting to the probate of the will, and afterwards moved the court to dismiss the application because Mason was not named as executor in the will and was not interested in the estate. On the following May the will was probated, and the objectors appealed to the District Court, where the appellee, the "Universalist General Convention," was allowed to come in and prosecute the proceeding and probate the will.

It is contended by appellants that appellee could not intervene in the District Court, but should have begun a new proceeding in the County Court. In the view we have of the case it will not be necessary to decide whether the facts alleged in Mason's petition entitled him to probate the will as a person interested in the estate, the will and the personal effects having been by the testator confided to him with instructions to have the will carried out. An application to probate the will was made and the will was filed in the County Court, upon which notices were issued and posted; and the matter so put before the court was so far a proceeding *in rem* as to authorize the County Court to hear the cause upon the coming in of the real party interested in the estate as legatee under the will; and inasmuch as the case was properly appealed—that is, in due form—by the objectors, when the law required it to be tried *de novo,* the District Court had the power to dismiss Mason and entertain the proceeding at the instance of the legatee—just as could have been done in the County Court. Rev. Stats., arts. 1842, 2200, 2207.

In the case of Phelps v. Ashton, 30 Texas, 347, under similar provisions of the statute cited above where opposition may be filed to the application by any person interested in the estate, the question now under consideration was decided. Justice Smith, delivering the opinion of the court, said: "The court is not directed to grant letters to the person who may apply for the probate of the will. It will hardly be contended that Michael Ashton could not have become a party plaintiff or applicant in the County Court at any time before the trial in that court. And as the appeal operated to remove the whole case to the District Court for trial *de novo,* every person interested in the estate had a right to be made a party to the proceedings and be heard, or it must be admitted that the case does not stand in the District Court as it did in the County Court, to be tried *de novo*—that is, anew and as in that court; * * * and hence we must conclude that there was no error in permitting Michael Ashton to proceed with the cause in his name or in the extension of letters to him as an executor of the will."

It is claimed by appellants that the application of the Universalist General Convention came in too late, more than four years after the death of Bilderback, and that the statute forbade its probate after such lapse of time.   Four years and nine months elapsed after the death of Bilderback to the time appellee came in to prosecute the proceeding and probate the will.   Appellee did not ask for letters of administration with the will annexed, but only that the will should be probated.

The statute limits the time in which letters testamentary and of administration must be applied for to four years after the death of the testator or decedent; and also declares that no will shall be probated after a lapse of four years from the death of the testator, unless it be shown by proof that the party applying for such was not in default in failing to present the same for probate within four years.   Rev. Stats., arts. 1827, 1828.

In Ochoa v. Miller, 59 Texas, 462, it was held that where the will was not under control of the applicant, nor in its proper place of deposit, but was in possession of the opposite party, it might be admitted to probate after the expiration of four years from the testator's death, but that no letters could issue.

In the case of Ryan v. Texas Pacific Railway Company, the testatrix died November 6, 1871; application to probate the will was filed July 4, 1882; the order probating the will was on September 23, 1884.   As an excuse for not sooner presenting the will for probate the application alleged that the contestants in 1878 instituted suit against E. M. Daggett as heirs of the testatrix; that E. M. Daggett offered the will for probate in 1881 (1871?), which was dismissed by a compromise with contestants; that in June, 1881, contestants sued applicant for partition for 97 acres of land (which it had purchased of E. M. Daggett in 1875), which suit was still pending; that Daggett, after his agreement to compromise with contestants, refused to prosecute his application to probate the will, though requested to do so by applicant.   It was held that the will was properly admitted to probate to establish a link in applicant's title, but that letters could not issue.

In this case, while it was pending in the County Court, contestants moved the court to dismiss Mason's application to probate the will and for letters of administration with the will annexed, because he was not named as executor, and had no interest in the estate; whereupon, in April, 1883, Mason amended his application, declaring that it was made by him as trustee in behalf of the board of trustees of the General Convention of the Universalists of the United States of America, and further alleging that the original corporate name had been changed by Act of the Legislature of the State of New York of May 7, 1872, to the Universalist General Convention.   This amendment was filed less than four months after the death of Bilderback, and upon this amendment the County Court heard the proof and probated the will May 3, 1883, reciting as follows:

"This day came on to be heard the application of Sanford Mason as trustee, in behalf of the board of trustees of the General Convention of Universalists of the United States of America, whose corporate name is alleged to have been changed    *   *   *    to the 'Universalist General Convention.'"

No letters were granted.   After the case was appealed to the District Court the cause proceeded under the style and form as in the County Court until October 10, 1887, when the appellee, in its own name of the "Universalist General Convention," appeared by the same attorneys that had all along represented Mason in the probate of the will, and asked that it be admitted to probate.

Mason testified that the will was placed in his hands before the testator's death—while he was about to die—with the request that he have it carried out; that Bilderback told him before that he was going to make him his trustee.

The evidence shows that Bilderback turned over all his personal effects to him when he was near his death and believed he was about to die.

Whether these facts would be sufficient to authorize the probate of the will upon Mason's application we do not decide, but we do think them sufficient under the law to justify the appellee in the conclusion that there was a good application before the court for that purpose, of which it was the beneficiary.   There was an application before the court from the beginning for its benefit, which it finally took up and prosecuted in its own name.   We do not think that appellee was in default in presenting the will for probate.   .

We are not called on to construe the will in all its provisions in a proceeding to probate.   It seems to be clear that a foreign corporation can take a bequest by will in New York, and for this purpose at least the will may be probated.   We waive the other questions involved as to the power to take by devise, as the court should be free to decide when the point is directly in issue.   See Williams on Ex., 1114, foot note; In the Matter of Fox's Will, 52 N. Y., 530; Sherwood v. Am. Bible Society, 4 N. Y., 231; 43 N. Y., 424; White v. Howard, 46 N. Y., 144.

We are not advised as to what the condition of the law may be in the State of New York as of controlling effect upon this will.   We deem it prudent to make no decision touching the right of a foreign corporation to take by devise until the matter is directly in issue.

The bequest was to the "board of trustees of the General Convention of the Universalists in the United States of America, a corporation created in the year 1866 under the laws of the State of New York, their successors and assigns, for the corporate purposes of said board of trustees."   The charter was granted on the 9th of March, 1866, to certain named persons, creating them a body corporate by the name as stated in the will.   By amendment of the act in 1872 the corporate name was changed to that of

the Universalist General Convention.   We think the corporation is suffi-
ciently identified in the will by its original corporate name and its suc-
cessors.   The fact that the name had been changed at the date of the
will is immaterial; the will was in favor of the original corporation "and
its successors," who are shown to be the applicants.   Where there was "a
devise to a society for the spread of the gospel, organized and known by
the name given it in the will at its date, and prior to the death of the
testator it was incorporated under such name, the devise was held good."
1 Jarm. on Wills, 181, note.   In the case before us there was no change
in the organization, only a change in the name as incorporated; the will
was in favor of the same institution, the same corporation, and is not in-
valid for want of identification of a legatee.

The charge of the court was the law of the case and needed no amend-
ments, as proposed by the special instructions requested by contestants,
which were, in the main, not the law applicable to the case.   Vance v.
Upton, 64 Texas, 478.   The evidence of the sanity and testamentary
capacity of deceased was ample, and sustained the verdict of the jury.

There were three subscribing witnesses to the will, two of whom testi-
fied on the trial to such facts as they remembered, but they could not
state that the testator's name was signed to the will when they signed it,
or that he acknowledged to them that he had signed it.   They testified to
facts and circumstances which might be deemed sufficient proof of the
fact that he had signed the will, but in aid of this proof, over objections
of contestants, the court permitted one of the subscribing witnesses to
state that he believed that the signature of the testator was genuine from
having seen him write, and the testimony of the attorney who drew up
the will, which indicated by the circumstances stated that the testator
had signed it in form as required by law.   The objection to this testimony
was that the execution of the will must be proved by the subscribing wit-
nesses, one of whom (Bernard) had not been called and who was in the
city where the case was being tried and who could be had in court.   A
bill of exceptions to this effect was allowed by the court.   The meaning
of the objections was that the testimony was not the best evidence.   The
assignment of error upon this ruling of the court is well taken.

Where the subscribing witnesses fail to remember the facts necessary
to probate a will, are dead, beyond the jurisdiction of the court, or are
unwilling from corrupt motives to make the proof, any other legitimate
evidence may be heard; and it has been decided that a will may be pro-
bated by evidence opposed to that of the subscribing witnesses.   Hopf
v. The State, 72 Texas, 281.   But the testimony of the subscribing wit-
nesses who have been called upon by the testator to attest the due exe-
cution of a will is primary, and must be produced or the absence of the
witnesses accounted for before other indirect testimony can be offered.
When the subscribing witnesses have testified or their absence accounted

for, other evidence secondary in character is admissible.   We do not intend to to say that the evidence exclusive of that objected to was insufficient to probate the will, but merely that it was improper to resort to secondary evidence to establish the fact of its due execution as long as there was primary evidence of the fact accessible to the court, there being no cause shown for its nonproduction.   Sample v. Irwin, 45 Texas, 567; White v. Hall, 20 Texas, 679; Rev. Stats., art. 1847; 1 Greenl. on Ev., sec. 518.

The testimony of the attorney who drafted the will, identifying it as the one drawn by him at the testator's request and showing his sanity, was admissible.

We deem it unnecessary to discuss any other questions raised by the assignment of errors, as they will not in all probability occur upon another trial.

Because of the error in admitting secondary evidence, as above pointed out, we conclude the judgment of the court below should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted March 25, 1890.