## DAY et al. v. HENDERSON. (No. 9278.)

(Court of Civil Appeals of Texas. Ft. Worth. March 20, 1920.)

**1. Appeal and error ⬳374(3)—Guardian ad litem need not give appeal bond.**

Under Rev. St. 1911, art. 2106, providing that executors, administrators, and guardians shall not be required to give bond on appeal, a guardian ad litem, appealing from a judgment against his wards, need not give an appeal bond.

**2. Appeal and error ⬳609—Appointment of guardian ad litem, shown in supplemental transcript, sufficient.**

Where the transcript showed that the guardian ad litem of infant defendants gave notice of appeal from a judgment overruling their motion for new trial, and a supplemental transcript, containing the judgment of the county court wherein the action was instituted, showed the appointment of the guardian ad litem, the appeal will not be dismissed, on the theory that the record failed to show the guardian's appointment.

**3. Wills ⬳52(1)—Contestant has burden of proof.**

One contesting a probated will by original proceeding on the ground that the testator was without mental capacity, has the burden of proof.

**4. Wills ⬳324(2)—Direction of verdict on testimony as to capacity held improper.**

Though, under Rev. St. 1911, art. 3267, a will may be proved by one of the subscribing witnesses, it is improper, in a proceeding to contest a probated will on the ground of want of mental capacity, to direct a verdict in favor of the contestant, although the only subscribing witness who testified stated that, in her opinion, the testator did not know what he was doing; the attorney who prepared the will and others giving testimony tending to show that the testator was competent.

Appeal from District Court, Tarrant County; Ben M. Terrell, Judge.

Action by J. C. Henderson against Mary Day and Johnnie and William Day, for whom W. P. McLean, Sr., was appointed guardian ad litem. After an adverse judgment of the county court, plaintiff appealed to the district court, and W. P. McLean, guardian ad litem, appeals from the judgment there for plaintiff on a directed verdict. Reversed and remanded.

McLean, Scott & McLean, of Ft. Worth, for appellant.

Capps, Cantey, Hanger & Short and Phillips & Trammell, all of Ft. Worth, for appellee.

BUCK, J. J. C. Henderson instituted this suit for the contest of the last will and testament of his father, W. C. Henderson, deceased, by filing his original petition in the

county court of Tarrant county on April 21, 1917, against Mary Day, joined by her husband, L. C. Day, independent executrix, and her children, Johnnie and William Day. By due course of procedure the cause reached the district court of the Sixty-Seventh judicial district, and was tried in that court on May 20, 1919. Plaintiff, in his original petition, alleged that he and appellant, Mrs. Mary Day, were the sole surviving heirs of the deceased, who died February 17, 1916; that at the time of his death W. C. Henderson was possessed of a large estate, consisting of real and personal property, in which plaintiff, by reason of being a son and one of the two surviving heirs, was entitled to an undivided one-half interest; that W. C. Henderson left a purported will, executed a few days before his death, and at a time when the said W. C. Henderson was mentally incapacitated to make and publish same; that said will bequeathed to plaintiff 100 acres of land, but without power to dispose of same until he had reached 40 years of age, and providing that, if plaintiff should die before the said W. C. Henderson, said 100 acres should pass to Mary Day under the terms of said will; that all the remainder of said W. C. Henderson's estate was, by said will, devised to Mary Day for life, with the remainder to the heirs of her body, and that Mary Day had caused said will to be probated and had qualified as independent executrix.

W. P. McLean, Sr., was appointed as guardian ad litem of the minor contestees. Upon the trial in the county court, Mrs. Day did not appear; but Judge McLean, as guardian ad litem, represented the minor contestees, and a judgment was rendered for the defendants. The plaintiff appealed to the district court, and evidence was heard, whereupon the court peremptorily instructed the jury to find for the plaintiff, and from the judgment rendered this appeal has been taken. The instruction given to the jury was as follows:

"Gentlemen of the Jury: The testimony in this case showing conclusively and without dispute that the will in controversy herein was not properly executed in the manner and form provided by law, you are therefore instructed to return a verdict for the plaintiff setting aside such will."

The minor contestees, through their guardian ad litem, have appealed. Mrs. Mary Day, having made no appearance in the county court and apparently none in the district court, and having filed no motion for rehearing, and having given no notice of appeal, is not a party to this appeal.

Appellee challenges the right of appellants to appear in this court on the following grounds: (1) Mrs. Mary Day is in no position to complain of any error in the action of the trial court, since she filed no answer, nor motion for new trial. (2) Nor can the judgment of the trial court be reversed at the behest of the minors, Johnnie Day and William Day, since they filed no appeal bond, nor otherwise perfected an appeal. (3) Nor at the behest of their guardian ad litem, so styled, since the record contains no warrant or evidence of his authority so to act, or to appeal without giving bond.

[1, 2] As as been said heretofore, Mrs. Day did not contest the suit, either in the county court or in the district court. But W. P. McLean, Sr., as guardian ad litem of the minor contestees, did contest the action in both courts. Under article 2106, providing that executors, administrators, and guardians appointed by the courts of this state shall not be required to give bond on an appeal or writ of error taken by them in their fiduciary capacity, it has been held that guardians ad litem are included in the provisions of this article, and are not required to give bond on appeal. Tutt's Heirs v. Morgan, 18 Tex. Civ. App. 627, 42 S. W. 578, 46 S. W. 122. In the instant case, a guardian ad litem did give notice of an appeal from the judgment of the court overruling the motion of defendants for a new trial. While there is no record in the transcript of the appointment of Judge McLean as guardian ad litem of the minor contestees, yet in the judgment of the county court, rendered April 3, 1917, and contained in a supplemental transcript tendered for filing with the agreement (which motion we grant and order the supplemental transcript filed) of counsel for both sides, it appears that Judge McLean was the duly appointed guardian and attorney ad litem for Johnnie and William Day. Hence we conclude that we should overrule the objections raised by appellee to our consideration of the appeal.

[3, 4] The evidence below consisted of the testimony of Mrs. D. I. Browne, one of the nurses at the All Saints Hospital, where Henderson was at the time of the making of this will, Mrs. Frank Ellison, Mrs. Emma Tighe, R. C. Cantrell, C. G. Melbourne, Russell Elliott, W. E. Elliott, Joe Elliott, Bob Henderson, and John L. Hill; the last named being the attorney who prepared the will, and who was present at the time it was purported to have been signed and executed by W. C. Henderson. Mrs. Browne testified that she was connected with the All Saints Hospital at the time this instrument, claimed to be the will of W. C. Henderson, was presented to Henderson; that it was a part of her duties to look after each and all of the patients; that she was called in by Mr. Hill, together with Miss Margaret McManus and Miss O. E. Rushing, also nurses in the hospital, to witness the instrument. She testified in part as follows:

"That is my signature on the paper exhibited to me by counsel. I signed it. As to the circumstances surrounding the signing of this name [W. C. Henderson], I will say that to my

way of thinking the man was delirious. My business in the room at the time was holding this man in the bed. They called me out of the hall and said, 'There is a gentleman here to see Mr. Henderson;' and I went out and talked to Mr. Hill, and he asked me, 'Would he be permitted to go to the room?' * * * When this name 'Henderson' was signed, we propped him up in bed, and I tried to help him write it. I held the pen in his hand. He could not hold it; he was delirious, and could not hold the pen. I do not believe that Mr. Henderson was conscious of anything that was going on in the room; what we really wanted him to do. I believe what we were talking to him about did not make an impression. I don't believe Mr. Henderson was really conscious of what was trying to be done."

Mrs. Frank Ellison testified that she went to see Mr. Henderson during his sickness at the hospital, and that he knew her, but that was about all. She testified:

"He didn't know much; but, of course, he knew me, because he had known me so long, and he just remarked that he was glad I come to see him, me and my sister; but he wasn't conscious. He didn't know; he was very sick, a very sick man, when we went to see him. He was in such mental condition then as not to be capable of understanding the nature of a business transaction at all."

Mrs. Tighe, niece of the deceased, went with her mother, Mrs. Hardesty, to see her uncle while he was in the hospital. She testified that he did not know her at that time, and didn't know her mother; that in her opinion he was not in such mental condition as to understand the nature and character of a business transaction; that it was either Wednesday or Thursday that she went to see him, Wednesday or Thursday after the Tuesday when the will was supposed to have been executed.

Other witnesses testified that they were there at various times during the week of Mr. Henderson's last sickness, and that in their opinion he was not in such a condition of mind as to know what he was doing at times.

Joe Elliott testified that he was at the hospital during Mr. Henderson's last sickness and was there on Monday; that Mr. Henderson sent for him, while he was visiting his father, who was also sick in the hospital, and asked him to go to John Hill's office and tell him to come out there; that as he started out of the room, Henderson called him back and said, "Joe, will you be sure to attend to this?" and "I told him that I would;" that he went to John Hill's office and gave him the message; that he thought Henderson was rational at the time he talked with him and knew what he was talking about.

John Hill testified:

That he had been a practicing attorney for 40 or 45 years in Tarrant county. That he had known Henderson during his lifetime very well.

That during the last 40 or 45 years they had been the best of friends, and he had been his (Henderson's) attorney. That when he received the message from Joe Elliott on Monday, about 3 o'clock in the afternoon, he prepared the will as it was signed. That he had talked with Mr. Henderson about what the latter wanted in his will, and that he had written the will in accordance with instructions. That when he went out to the hospital on Monday, and got into Mr. Henderson's room, Mr. Henderson said to him: "'I have been inquiring for you this morning four times. I have been looking for you anxiously. Have you prepared that will? If not, I want it prepared right now.' And that said witness said: 'I knew, or thought I knew, that you wanted the will when you sent for me, and I have written it according to the instructions you gave me before.' That he took the will out of his grip, and read it to the dying man slowly, and in a loud tone of voice, asking every line or two, 'Do you understand it thoroughly?' and Mr. Henderson answered that he did. That when he got through reading it, he said to Mr. Henderson, 'How does it suit you, Bill?' and he answered. 'Why, it suits me exactly.'"

The witness further testified as to having some difficulty in getting the nurses to come in and witness the will, because they were afraid that they would have to come to court to testify; that three of the nurses signed the will; that after the will was signed up and witnessed he put it in his grip and took it home, and after Henderson's death brought it to the courthouse and filed it for probate, and that it was probated. He further testified that in his opinion there was no question but that Mr. Henderson understood the nature and consequences of his act at the time he signed that will in disposing of his property; that he told Mr. Henderson that it would be necessary for the latter to ask the young ladies to witness his signature, and for him to tell them that the instrument presented was his will; that Henderson experienced great difficulty in talking, but said, "Yes; yes," and looked around.

Appellant urges that, in view of the testimony of John L. Hill, especially, and also that of Joe Elliott, it was error for the court to give the peremptory instruction in favor of the contestant. Appellee answers that under the law the testimony of Hill was incompetent and immaterial; that before other testimony would be admissible with reference to the proof of the will, the proponent of the will would be required to show that the subscribing witnesses were dead, beyond the jurisdiction of the court, or were unwilling from corrupt motives to testify in the case, or that they had testified; that the testimony of attesting witnesses is the primary source from which the question of whether a will is valid is to be determined; and that it is only after such witnesses have testified, or their absence as been accounted for, that other evidence becomes relevant, or competent.

The plaintiff introduced in evidence the signatures of the subscribing witnesses, with their street addresses in Ft. Worth. No explanation is given why Miss McManus and Miss Rushing were not called.

Though it may be true, as held in Elwell and Heist v. Universalist Gen. Convention, 76 Tex. 514, 13 S. W. 552, that before other testimony is admissible to prove the execution of a will, in a suit to admit a will to probate, it first must be shown that the subscribing witnesses have all testified, or that such witnesses, one or more, have either died, are beyond the jurisdiction of the court, or are unwilling from corrupt motives to make the proof. But this suit was not filed in an effort to probate the will. The record discloses that the will was probated, and that this suit was filed in the county court to set aside the action of the probate court, and to annul the provisions of said will, and to hold them of no force and effect. In this character of a suit, the burden of proof was on the plaintiff. His witness, Mrs. Browne, testified that W. C. Henderson did sign the instrument presented to him, but she stated that in her opinion he was delirious at the time and did not know what he was doing.

Article 3267 provides how a written will, which is produced in court, may be proved: (1) By the written affidavit of one of the subscribing witnesses thereto, taken in open court and subscribed by such witness. (2) If all the witnesses are nonresidents of the county, or those resident of the county are unable to attend court, it may be proved by the testimony of any one or more of them taken by deposition. (3) If none of the witnesses are living, it may be probated on proof by two witnesses of the handwriting of the subscribing witnesses thereto, and also of the testator, if he was able to write, which proof may be either by affidavit taken in open court and subscribed by the witnesses, or by deposition.

In the case of Stephenson v. Stephenson, 6 Tex. Civ. App. 529, 25 S. W. 649 (writ denied), the court said:

"In this case one of the subscribing witnesses was introduced and examined, and the testimony of others present at the execution of the will was then admitted to aid in establishing it. Our statute provides that a will may be probated by the evidence of one of the subscribing witnesses. Rev. St. art. 1847 [our present article 3267, Rev. Tex. Civ. Stats.]. This is the primary evidence, but when it has been introduced, and the witness has testified to facts sufficient to probate the will, the rule is satisfied, and the question of the due execution of the will is then one of fact, to be tried like any other. The court may admit the will to probate upon the evidence of one of the subscribing witnesses, if he testifies to the requisite facts; and, this being so, what reason is there for holding that it may not do so upon the same evidence, when corroborated by other testimony? This would seem to be the effect of the contention. It is said that it was the practice of the court of chancery, upon bills to establish wills, to require the production of all the subscribing witnesses; but such is not believed to be the general rule in probate proceedings, especially where there are statutes like ours."

In this case the subscribing witness Mrs. D. I. Browne testified to the signature by Henderson to the will, but she further testified that in her opinion he was not conscious of what was going on and did not know he was signing his will. In Wills and Administration, by Borland, page 226, it is said:

"The grounds of a contest are usually either defective execution of the will, want of testamentary capacity, or the existence of fraud or undue influence. * * * It being the duty, of the proponents of the will to make formal proof of its legal existence, they usually do so by the attesting witnesses. In case the attesting witnesses are dead or beyond the jurisdiction of the court, the statute provides that the affidavits of probate made by them in the probate court may be used. It was originally decided that the testimony of both subscribing witnesses was necessary; but this is not the general rule. If the subscribing witnesses fail to prove due execution, other evidence may be resorted to, or the subscribing witness may be contradicted by other witnesses, or by circumstances. Where the question is as to the sanity or mental capacity of testator, the opinions of witnesses who have had an opportunity to judge of his powers are sometimes the best evidence. For this purpose witnesses may be divided into three classes: Attesting witnesses, ordinary lay witnesses, and expert witnesses. Each of the three classes are entitled to give opinion evidence in a proper case, but the rule differs as to each. Attesting witnesses are favored by the law in nearly all jurisdictions. In many states the rule is that: A subscribing witness to a paper alleged to be a will may, though not an expert, testify to his opinion concerning the sanity of the alleged testator, without stating the facts upon which such opinion is founded. The opinions of such witnesses, though not controlling, are entitled to great weight, as the law has placed them around the testator to judge, among other things, as to his capacity. In some states attesting witnesses are upon no different footing than other lay witnesses. Ordinary witnesses, who are neither attesting witnesses nor medical experts, may also give their opinions as to the condition of the testator's mind; but such opinions must be preceded by and based upon facts detailed by the witness to the jury, showing: First, the opportunity of the witness to form a judgment; and, second, the symptoms, habits, acts, and other manifestations on the part of the testator on which such judgment is based. Witnesses who bear close family, social, or business relations with testator possess the most favorable opportunities for knowing his mental condition, and usually their testimony as to his mental capacity is entitled to great weight."

In Brown v. Mitchell, 88 Tex. 350, 31 S. W. 621, 36 L. R. A. 64, it is said:

"The authorities are in conflict upon various phases of this question, which it is not neces-

sary here to discuss. We consider that the decisions of our own court, cited above, establish the rule that all witnesses, whether subscribing witnesses, experts, or others, who know the facts, and having stated such facts, may express opinions founded upon their own knowledge as to the mental condition of the testator. This rule is well sustained by sound reasoning and authority"—citing authorities.

In 40 Cyc. p. 1022, § II, it is said:

"The courts are almost unanimously agreed that one who, after the probate of a will, brings an action or proceeding to contest its validity, and to have it set aside, on the ground of testamentary incapacity, has the burden of proving such incapacity"—citing Renn v. Samos, 33 Tex. 760.

On page 1038, § III, of the same authority, it is said:

"While, in a few states, no persons other than experts and subscribing witnesses are permitted to express an opinion on the testator's mental capacity, the rule prevailing in a majority of the states (including Texas) is to allow an expression of opinion by a nonexpert witness as to the mental condition of the testator, where the witness has been acquainted with the testator and has adequate opportunity to observe his capacity, and has already testified to the facts which form the basis of his opinion."

We conclude that the trial court erred in giving the peremptory instruction for appellee, and that even though the rule, discussed in the case of Elwell and Heist v. Univ. Gen. Convention, supra, that the subscribing witnesses must first testify or their absence be accounted for before the testimony of other witnesses to the execution of the will may be admitted, may apply in a suit for the probate of wills, yet we do not think that such rule will apply in an independent suit to set aside a judgment already probating the will. We believe that the burden of proof is on the plaintiff to establish, either that the will was not signed by the testator, or that he was not in such a mental state at the time he did sign it as would render him incapable of disposing of his property, by will. In Elwell and Heist v. Univ. Gen. Convention, supra, it is said:

"The evidence of an attorney, who drafted the will at the request of the testator, identifying it, and showing the sanity of the testator, is admissible."

While it is true that Mrs. Browne testified that W. C. Henderson did not request her or the other subscribing witnesses to sign the document, yet John L. Hill did testify that Henderson did so request the witnesses to act as subscribing witnesses to the will.

For the reasons indicated, the judgment of the trial court will be reversed, and the cause remanded for a new trial.