### ALDANA v. ALDANA et al.

No. 2564.

Court of Civil Appeals of Texas. El Paso.

Oct. 1, 1931.

Rehearing Denied Oct. 22, 1931.

Fryer & Cunningham, of El Paso, for appellant.

W. Joe Bryan, Knollenberg & Cameron, and Loomis & Kirkland, all of El Paso, for appellees.

WALTHALL, J.

This case presents an appeal from an order of the district court of El Paso county in the appointment of an administrator in the estate of Celso Sanchez Aldana, deceased.

Briefly stated, the material facts in the matter of the appointment of the administrator in said estate are as follows:

Maria Ysabel Sanchez Aldana filed an application in the county court of El Paso county for administration upon the estate of Celso, alleging his death, that he died intestate, that he left an estate, stating of what it consisted, its value, necessity for administration, and that said estate was located in El Paso. She alleged that she was the surviving widow of the deceased, and that as such surviving widow she was entitled to letters of administration upon said estate. Temporary administration was granted, and applicant was appointed temporary administratrix of said estate upon her giving bond. Subsequent to said appointment, Gabriel Sanchez Aldana, a brother of the deceased, on behalf of himself and brothers, filed in the county court a contest to the said appointment of Maria as administratrix, denying that she was the wife of deceased, that she was not related to deceased, and was not an interested party in said estate. Contestant alleged his relation to deceased to be that of a brother, stated the names of the surviving heirs of deceased, and that they resided in Mexico, that he was not disqualified, and asked that he be appointed administrator of said estate.

Pending the temporary administration, Enrique Sanchez Aldana, as the son and only surviving heir of said estate, contested the appointment of Maria and Gabriel, and asked that letters of administration be granted to him, but later withdrew from the contest, and we will not further mention him.

On a final hearing in the county court, an order was entered denying the application of each of the two applicants for the appointment as administrator of said estate, and an order was entered appointing the First Na-

tional Bank of El Paso as administrator of said estate upon giving bond. The bank made no application for said appointment, and gave no bond. Each of the said applicants severally excepted to the orders of the court refusing their appointment, and appointing the First National Bank as administrator of said estate, and gave notice of appeal to the Forty-First district court of El Paso county. Appeal was perfected by Maria. Gabriel, contestant, did not perfect his appeal by giving bond.

In the district court the case was tried without a jury, resulting in an order appointing Maria as administratrix of said estate. Gabriel appeals from that order.

### Opinion.

■ As stated, appellant, Gabriel Sanchez Aldana, gave notice of appeal from the order of the county court appointing the First National Bank administrator of said estate, but did not perfect his appeal to the district court by giving bond. Appellee suggests that, appellant not having perfected an appeal to the district court, that court had no jurisdiction to hear appellant's appeal and contest, and for that reason this court is without jurisdiction to hear his appeal and contest.

There is no merit in the contention. The trial in the district court was a trial de novo, and that court was governed by the same rule as to parties, pleadings, and amendments of pleadings as obtained in the original hearing in the county court, otherwise the trial would not be a new trial. Phelps v. Ashton, 30 Tex. 347; Elwell v. Universalist Convention, 76 Tex. 514, 13 S. W. 552; Harrell et al. v. Traweek, 49 Tex. Civ. App. 417, 108 S. W. 1021; Drew v. Jarvis, 110 Tex. 136, 216 S. W. 618.

■ Maria Ysabel Sanchez Aldana, in her application for appointment as administratrix of the estate of Celso Sanchez Aldana, deceased, and as the ground for her appointment, alleged that she was the wife of the deceased at the time of his death.

Appellant, Gabriel, alleged that Maria was not the wife of Celso Sanchez Aldana; was not related to deceased; and is not an interested party in said estate.

The trial court heard the evidence and made findings of fact in the judgment. The only finding brought into controversy here is the following: The court found: "That the said Maria Ysabel Sanchez Aldana, as the surviving wife of Celso Sanchez Aldana, is entitled to permanent letters of administration on the estate of Celso Sanchez Aldana, deceased; that Gabriel Sanchez Aldana is not entitled to letters of permanent administration on said estate."

On the finding letters of administration were ordered issued to Mrs. Aldana. If Mrs. Maria Aldana is the surviving wife of the deceased, as found by the trial court, she is the first in order of persons who are qualified to receive letters of administration on said estate, and her appointment would not be error.

Appellee alleged facts which, if sustained by the evidence, would be sufficient to show that she was the common-law wife of the deceased. We have carefully reviewed the evidence, and have concluded that the evidence is sufficient to sustain the trial court's finding that at the time of the death of the deceased, appellee was his common-law wife. Appellee testified: That she and the deceased became acquainted with each other in 1917. At that time she was living at the home of Mrs. Sidney Moore. That from 1917 to January, 1919, it was mutually agreed between appellee and deceased that appellee was to be his wife and he was to be her husband. In 1919 deceased said to appellee: "It is time for us to join in matrimony, and from 1919 we were united together and we never did separate until he died; * * * we made this agreement in 1917, but we did not live together until 1919. The first week in January (1919) is when we united in matrimony. * * * A week before that he told me that our marriage would be effective when he came to Mrs. Moore's house after me, and then he told Mrs. Moore that he was taking me as his wife. I agreed to it."

■ Mrs. Moore was asked: "When did she (appellee) cease her services for you?" Mrs. Moore was permitted to answer, over objection that her answer was a conclusion and was hearsay: "When she went to marry her husband." The point of the inquiry was the date when appellee's services ended and not the fact of appellee's marriage. The answer, we think, if error, the trial being to the court, was not reversible error.

■ The witness W. R. Piper, a real estate dealer, knew deceased in 1923, handled a real estate deal in which deceased had occasion to sign his name and to state whether he was married or single, and that to the question: "Married?" deceased answered, "No." The question and answer were not admitted. The question and answer were hearsay.

■ The court refused to permit the witness Piper to testify that in all of his relations with deceased during ten years that he knew deceased he never knew that he had a wife. We think the statement was not admissible, but, if it was, its probative force is so slight that it presents no reversible error; would hardly cause a different result on another trial.

■ The court refused to permit witness Piper to answer the question: "And you ascertained from your investigation and conversation with Celso Sanchez Aldana that he was a single man?" The witness would have answered that he made inquiry and ascertained from his investigation and conversations with the deceased that he was a single man.

The assignment presents no error. The question and answer involves the ultimate

issue of fact, Was deceased a single man? Witness could state the facts disclosed to him by his investigation, if such facts were admissible, from which he concluded that deceased was a single man, but not his conclusion; it invades the province of the court trying the case.

■ Appellant was asked: "Did Celso Sanchez Aldana ever tell you at any time out of the presence of Maria Ysabel Carillo (appellee) that she (appellee) was a servant and not his wife?" The court, on objection, excluded the answer. The answer would have been that deceased did state to witness, out of the presence of appellee, that appellee was a servant and not his wife.

The point involves an exception to the general rule of hearsay evidence, which exception authorizes marriage to be proved by hearsay evidence. The discussions in the books and the opinions of the courts are not uniform on the question presented.

C. J. vol. 38, p. 1336, § 109, states the rule to be that "declarations in denial of a marriage by one of the parties are not admissible against the other, unless made in the presence of or acquiesced in by such other."

The case of Schwingle v. Keifer et al. (Tex. Civ. App.) 135 S. W. 194, we think in point. A writ of error was granted in the case and affirmed, same 105 Tex. 609, 153 S. W. 1132. The Supreme Court did not discuss the point presented here. In that case Jacob Schwingle made a declaration to a servant and other witnesses, as here, that appellant, Veneranda Schwingle, was not his wife. Judge Fly, in discussing the admissibility of the evidence, said that, if the evidence had been objectionable, appellant lost the advantage of her objection by permitting it to be answered without challenge, but does not state, and it was not necessary to state, what would have been the court's holding had an objection been made. The court, however, referred to, with approval, the case of Imboden v. St. Louis Union Trust Co., 111 Mo. App. 220, 86 S. W. 263, a Missouri case, and Topper v. Perry, 197 Mo. 531, 95 S. W. 204, 114 Am. St. Rep. 777, and Fryer v. Fryer, Rich. Eq. Cas. (S. C.) 107, in which cases it is held that such evidence is permissible. To the same effect is De Beque v. Ligon et al. (Tex. Civ. App.) 286 S. W. 749, where it is said in a suit by a divorced husband, who claimed that common-law marriage with former wife was consummated after divorce, testimony as to income tax returns that she was a feme sole, made when effect on rights involved could not have been in mind, held admissible as against objection that it was a self-serving declaration.

The Commission of Appeals in 292 S. W. 157, 158, reversed the case, saying: "The evidence having conclusively established the consummation of such common-law marriage, the declaration of Maggie De Beque [the common-law wife], contained in the various legal documents executed by her, to the effect that she was a single woman cannot have effect to impair the marriage relation shown by the evidence to have existed at the time."

■ The fact of the common-law marriage is a provable issue in the case, and declarations and admissions of the husband and wife are generally admissible to prove or disprove their marriage. Some of the authorities hold that such declarations are admissible as original evidence of facts from which the marriage may be inferred and as a part of the res gestæ. R. C. L. vol. 18, p. 424, and notes 9 and 10. Such declarations, however, to be admissible as a part of the res gestæ, must be made during the cohabitation of the parties, for, if not so made, they are not considered contemporaneous with the fact sought to be proved so as to render such declaration a part of the res gestæ. The true test for the admission of the declaration of a deceased person is whether such declaration was made under circumstances justifying the conclusion that there was no probable motive to falsify the fact declared, such as the existence or nonexistence of a controversy at the time of such marriage relation. As said in Teter v. Teter, 101 Ind. 129, 51 Am. Rep. 742, statement of the deceased that there was no marriage may be construed to mean that there was no formal or ceremonial marriage, as it is unusual to use the word "marriage" as signifying the ceremony. Especially would this be true in this case where the facts show that during the relationship of the parties there was a separation of the parties, during which time a ceremonial marriage took place between appellant and another, which was thereafter abandoned, and appellee and deceased assumed their former relation, which continued until the death of deceased. We think the circumstances surrounding the declarant at the time should be shown in order that the court trying the case can determine its admissibility and its probative force. To permit the declaration of the deceased not made in the presence of appellant that appellant was "not his wife" involves a conclusion of the deceased and the ultimate fact in the case, and under circumstances undisputed showing long years of cohabitation and acting together as husband and wife.

We have concluded that the exclusion of the statement does not present reversible error.

■ The court admitted, over objection, a duplicate of individual income tax return for net incomes from business, etc., for the year 1929, made by "C. Sanchez Aldana, 1001 East Missouri street, El Paso, El Paso County, Texas." The tax return showed:

"1. Are you a citizen or resident of the United States? Resident.

"3. Is this a joint return of husband and wife? Yes.

"5. Were you married and living with husband or wife on the last day of your taxable year? Yes.

"37. Personal property exemption. $3,500.-00."

The assignment presents no reversible error.

■ At the close of the evidence, appellant moved to exclude the evidence of appellee to the effect that she and deceased agreed to live together as husband and wife, as being in violation of article 3716, Rev. Civ. Statutes.

Without discussing the cases, the question presented is ruled by the cases of Ingersol et al. v. McWillie et al., 9 Tex. Civ. App. 543, 30 S. W. 56, in which a writ of error was denied, and Walton et al. v. Walton et al. (Tex. Civ. App.) 191 S. W. 188. This proceeding is not an action by or against an executor, administrator, or guardian in which action judgment may be rendered for or against appellee in any such capacity; nor is it an action by or against any heir or legal representative of the decedent arising out of any transaction with such decedent; it is simply a proceeding in the probate court, on application for the appointment of an administrator in the estate of a deceased person. Should letters of administration be granted, an order to that effect is entered, giving the name of the intestate, the name of the appointee, and fixing the bond. No other kind of order could properly be entered.

■ After appellee had become the common-law wife of Aldana, if she had become such, such marriage being valid in this state, a ceremonial marriage of appellee to Francisco Castellano did not have the legal effect to set aside, dissolve, or annul the common-law marriage with Aldana. Such common-law marriage, like a ceremonial marriage can be set aside or annulled only by a decree of divorce or by death of one of the parties of the marriage.

We have carefully reviewed the entire record and have concluded that reversible error is not made to appear.

The case is affirmed.