BUTLER v. FECHNER et al. (No. 5969.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 13, 1918.)

1. EXECUTORS AND ADMINISTRATORS ⊸234, 236—APPROVAL AND ALLOWANCE OF CLAIM —NECESSITY.

One having a claim against a decedent's estate was charged with knowledge that the administratrix had no authority to pay the account unless it was allowed by her and approved by the court and paid in due course of administration.

2. EXECUTORS AND ADMINISTRATORS ⊸234— ALLOWANCE OF CLAIMS—DUTIES OF CLAIMANT.

Where an administratrix did not promise plaintiffs that she would allow their account against the estate nor lead them to believe that it had been allowed and the account was accessible to them, they were charged with knowledge that it had not been allowed, and it was incumbent on them to see that it was allowed as the law required.

3. EXECUTORS AND ADMINISTRATORS ⊸437(7) — ACTIONS — LIMITATIONS — ALLOWANCE OR REJECTION OF CLAIMS.

Rev. St. 1911, art. 3443, provides that, when a claim against a decedent's estate is presented the executor or administrator shall indorse thereon, or annex thereto, a memorandum of his allowance or rejection thereof. Article 3444 provides that a failure to make the indorsement or attach the memorandum is equivalent to a rejection of the claim and shall authorize the claimant to sue as if the claim had been rejected. Article 3449 provides that when a claim is rejected the owner may sue within ninety days and not thereafter. Held that, while an administratrix was doubtless entitled to a reasonable time in which to investigate a claim

before allowing or rejecting it, and while the claimant might give her a reasonable time for such investigation, where she neither allowed nor rejected the claim, they were not justified in waiting over a year before taking any action.

4. EXECUTORS AND ADMINISTRATORS ⊸431(2) —ACTIONS—CONDITIONS PRECEDENT—REJECTION OF CLAIM.

If the failure of an administratrix to either allow or reject a claim presented to her, coupled with her promise that it would be paid, amounted to an allowance of the claim, the claimants had no cause of action on the claim; there being no rejection as a basis for the suit.

5. LIMITATION OF ACTIONS ⊸143(5) — NEW PROMISE—PROMISE BY ADMINISTRATRIX.

A promise by an administratrix to pay a claim which had not then been presented to her for allowance or rejection and which was not so presented until limitations had run did not halt the running of limitations, as the claimants were charged with knowledge that she could not pay the claim as promised until it was allowed and approved, especially as Rev. St. 1911, art. 5705, requires a promise to pay, after an account is due, to be in writing in order to prevent the running of limitations.

6. ATTORNEY AND CLIENT ⊸77—SCOPE OF AUTHORITY—PROMISE TO PAY CLAIM.

An attorney for an administratrix could not and did not bind her by his statement to a claimant that he thought she would pay it when she got the money, and she was not thereby estopped from pleading limitations against the claim.

Appeal from District Court, Karnes County; F. G. Chambliss, Judge.

Action by R. H. Fechner and another against Mrs. Pearl Elder, administratrix of W. B. Elder, deceased, in which P. B. Butler, temporary administrator, was substituted as defendant on the death of the original defendant. From a judgment for plaintiffs, defendant appeals. Reversed and rendered.

L. H. Browne, of San Antonio, for appellant. Lewright & Douglas, of San Antonio, for appellees.

FLY, C. J. R. H. Fechner and C. W. R. Zeppa filed suit against Mrs. Pearl Elder, surviving wife of W. B. Elder, deceased, and administratrix of his estate, for the sum of $1,008.38, which it was alleged became due and payable on July 15, 1910. In an amended petition the death of Mrs. Elder was shown, and P. B. Butler, temporary administrator of the estate of W. B. Elder, was made the defendant. It was alleged that W. B. Elder died on December 15, 1910, intestate, leaving an estate of the probable value of $10,000, being the community property of himself and Pearl Elder, his wife; that, besides his wife, an only child survived him; that on or about March 10, 1911, Pearl Elder qualified as administratrix of the estate; that at his death W. B. Elder was indebted to a certain firm, of which Fechner was a member, in the sum of $1,-008.38; that appellees afterwards bought the whole claim; that on or about June 1, 1911, the account was presented to the administratrix for approval; that she did not ap-

prove the account in writing, but stated that it would be paid, and requested appellees to deliver it to her attorneys, which was done; that the attorneys filed the claim in the probate court, but it was not marked either approved or rejected; that afterwards the administratrix and her attorneys from time to time stated to appellees that the account would be paid, but that there was no money on hand with which to pay the account. Fraud was also alleged on the part of the administratrix in making the statements she did in order that the claim might become barred by limitation. Appellees also pleaded estoppel against the estate to plead limitations. It was also pleaded that the claim was rejected on March 1, 1913, and suit was filed on March 10, 1913. The administrator pleaded general and special exceptions, general denial, and limitation of two years. The cause was tried, without a jury, and judgment rendered in favor of appellees in the sum of $1,008.38, with 6 per cent. interest from January 1, 1911.

It was pleaded and proved that the claim was presented to the administratrix on or about June 1, 1911, but it was neither approved nor rejected by her in writing, although she stated that it would be paid. She did not reject the account in writing until March 1, 1913, and suit was filed on March 10, 1913.

It is provided in article 3443, Revised Statutes, that when any claim for money against an estate, properly authenticated, is presented to the executor or administrator, he shall indorse thereon or annex thereto a memorandum in writing, signed by him, stating time of presentation and his allowance or rejection of the same, in part or in whole. In article 3444 a failure to give the indorsement or attach the memorandum is made "equivalent to a rejection of the claim, and shall authorize the claimant to bring a suit for the establishment thereof in like manner as if such claim had been so rejected." Provision is also made for the punishment of an executor or administrator who fails to allow or reject a claim. Again, in article 3449, it is provided that, when a claim against an estate is rejected, in whole or in part, the owner of such claim "may, within ninety days after such rejection, and not thereafter, bring a suit against the executor or administrator for the establishment thereof in any court having jurisdiction of the same."

The claim was presented to the administratrix more than 20 months before she indorsed her rejection on the same and before this suit was instituted. In addition to this, the account had been due for more than 2 years before the suit was filed.

Unless the promise of the administratrix stopped the running of the statute, and destroyed the provision of the statute that a failure to allow or reject a claim was equivalent to a rejection, the claim was rejected about 20 months before the suit was filed, and the claim was at that time extinguished, without the necessity of the answer of the administratrix setting up the defense. Loan & Trust Co. v. Fly, 29 Tex. Civ. App. 533, 69 S. W. 232; Whitmire v. Powell, 117 S. W. 439.

[1, 2] There is in this case no evidence of fraud upon the part of the administratrix. She claimed either that the whole account or portions thereof had been paid and appellees knew of this claim. They were charged with the knowledge that she had no authority to pay the account unless it was allowed by her and approved by the court and paid in due course of administration. She did not promise appellees that she would allow the account nor lead them to believe it had been allowed. The account was accessible to them, and they were charged with the knowledge that it had not been allowed. It was incumbent on them to see that the account had been allowed as the law directs that it should be. Fechner made no effort to have the claim allowed; all his energy seemingly being directed to collecting the amount without allowance and approval.

[3] No doubt under the statute the administrator or executor would be entitled to a reasonable time in which to investigate a claim before allowing or rejecting it, and in some instances it might become a question of fact as to what was a reasonable time for such investigation, but no such question can arise where a claim is not allowed in over a year. In this case the right of action was absolutely within appellees' control, for the statute gave them the right to sue on the claim when the administratrix, upon its presentation, failed to allow or reject it. If she was investigating the claim, she had only a reasonable time in which to make the investigation, and while appellees might have given her any reasonable time for such investigation, it cannot be held that they would be justified in waiting for over a year before taking any action. As said in 25 Cyc. 1198:

"Where, although the cause of action itself has accrued, some preliminary step is required before a resort can be had to the remedy, the condition referring merely to the remedy and not to the right, the cause will be barred if not brought within the statutory time; therefore the preliminary step must be taken within that period."

Appellees allege that the account was presented to the administratrix on June 1, 1911, but there is no allegation that it was either allowed or rejected; the only allegation being that she promised to pay the account. They also allege that the administratrix was holding the matter in abeyance to seek advice as to whether the claim should be allowed or not, from June 1, 1911, to March 1, 1913, and yet appellees took no action. The statute herein cited is positive and unequivocal:

.That when an administrator "shall fail to indorse thereon, or annex thereto, a memorandum in writing, as required by the last preceding article, such failure shall be deemed equivalent to a rejection of the ·claim, and shall authorize the claimant to bring a suit for the establishment thereof in like manner as if such claim had been so rejected."

The claim, when presented to the administratrix in this case, and not allowed by her, could have been sued on by appellees, and it cannot be reasonably contended that the suit could have been successfully defended on the ground that the administratrix wanted to investigate the account and promised to pay it, and therefore the suit had been prematurely or illegally instituted. The answer would be that the statute made the failure to write an allowance or refusal on the claim was a re: jection. The law is imperative that when a claim is rejected, whether in terms or by a failure to act, the owner can sue on the claim "within ninety days after such rejection and not thereafter." It will be noted that no exceptions are made in the law, and nothing to indicate that representations made by the executor or administrator would justify the claimant in not instituting his suit until long after the statutory time in which to sue had expired. The court is ask. ed to create an · exception not made by the statute. Danzey v. Swinney, 7 Tex. 617.

[4] In the case last cited the court held that, even though a claim is allowed, yet if it is not presented to the probate court for its action within three months, the action will be barred, and gives strong reason why promptness in disposing of claims is essential. In this case appellees claim that the actions of the administratrix amounted to an allowance by her, and, if so, they have no cause of action, because there was no rejection of the claim, the only basis for the suit.

In this case the evidence clearly shows that the claim was not allowed because the administratrix thought it had been paid in whole or in part, and that amounted to a rejection of the claim and time began at once to run against it. Willis v. Talbert (Sup.) 11 S. W. 535. Appellees knew that the administratrix was not satisfied with the justice of the claim; they knew that she was seeking advice about it, and that she had never placed her allowance of the claim in writing. She asked Fechner if he would not reduce the account, and consequently he must have known it had not been allowed. Fechner admitted that Mrs. Elder told him that "she was entitled to some credits on the account." Several weeks before the suit was brought she had filed a report in which she stated she had not allowed the account. She stated to Fechner that credits were due on the account before her attorneys filed it in the county court which was in 1911.

[5] In the original petition of appellees, it was alleged that the account was not presented to the administratrix until on or about March 1, 1913, more than two years after it became due. In a supplemental petition, sworn to by Fechner, it was alleged:

"Plaintiffs did not actually present said claim to defendant herein as administratrix herein for allowance, nor discuss said matter with defendant herein, until on or about March 1, 1913, on which date said claim, duly verified, was presented to defendant as administratrix and by her disallowed as far as to the debt described in the original petition of plaintiffs herein."

The facts in this case show that the allegations were true, and that the account was never presented to the administratrix for allowance until March 1, 1913. Fechner never sought to have the account allowed until that date, but sought to collect it. He could with truth swear as he did "Mrs. Elder never did refuse at any time to mark on it 'allowed' or 'disallowed' before March 1, 1913," because until that date he had never sought to have it allowed. He was charged with the knowledge that, although the estate had no cash with which to settle the account, the law required him to have it allowed or rejected, and, if allowed, that it should be presented to the court for approval, and, if rejected, suit should be filed in 90 days from such rejection if suit was desired. The account was barred by limitation of 2 years when rejected in writing, and may have been rejected on that ground. If the administratrix did agree to pay the account, which she had neither power nor authority to do, that would in no wise halt the running of the statute. The administratrix could not deceive appellees by stating that she would pay the account, because appellees knew she could not pay it.

The evidence totally fails to prove fraud on the part of the administratrix, but her hesitancy in regard to the account, if there was any, was because she thought the whole or a part of it had been paid. Counsel for appellees, as shown by the statement of facts, disclaimed that they charged Mrs. Elder with fraud in stating that she would pay the account, nor in order to prevent a suit until the statute of limitation intervened.

The promise to pay not being in writing and being made after the account was due did not prevent the running of limitation. Rev. Stats. 5705. It is not pretended that Mrs. Elder promised in writing to pay the account, or that she was ever asked and refused to allow or reject the claim .until March 1, 1913, when she wrote "rejected" on the account.

In the case of Kyle v. House, 38 Tex. 155, which is cited by appellees, and which has never been cited in Texas except to overrule a part of it (Mathews v. Rucker, 41 Tex. 636), the facts are very meager, but still indicate that the executor kept the claims after a promise to allow and pay them, until the three months had passed, and then rejected the account. Positive fraud it would appear was shown in that case, which referred alone to the 90 days after the claim was presented. There was a promise to allow, and

the owner of the claim may have been misled by that promise. No such circumstance appears in the present case. There was no promise to allow the account, and the verbal promise to pay could not stop the running of the statute of limitation. There was nothing in the acts or representations of Mrs. Elder to induce Fechner to believe that she would allow the account, and he knew that she had no power or authority to pay the account. In attempting to distinguish the case of Kyle v. House from this, no approval of its ruling is intended by this court.

[6] There was no request nor importunity upon the part of the administratrix to prevent appellees from suing, nor any agreement that the statute of limitation would not be pleaded, and consequently the case of Smith v. Dupree, 140 S. W. 367, has no applicability. It would be a singular proceeding for an executor or administrator to agree not to plead limitation as to a claim against the estate represented by him. The attorney did not and could not bind Mrs. Elder in what he said to Fechner about bringing suit. He merely stated that he thought she would pay the account when she got the money. There were no statements made by Mrs. Elder or her attorney, that could have deceived appellees as to their rights, or that would estop appellant from pleading limitation to the account. The law required that appellees should see that his account was allowed or rejected, and in the former case to have it approved by the county judge, or in the latter case to sue on it in a certain time.

The judgment will be reversed, and judgment here rendered that appellees take nothing by their suit and pay all costs in this and the lower court expended.

---

⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes