**SCOTT et al. v. TAYLOR.   (No. 2812.)**

Court of Civil Appeals of Texas. Amarillo. April 13, 1927.

1. **Executors and administrators** ⊂⊃506(1)— Where administrator is careless in filing accounts and handling estate, reasonable doubt as to his right to credit will be resolved against him (Rev. St. 1925, arts. 3320, 3321).

Where an administrator has been careless and negligent in his accounts and in duties required by Rev. St. 1925, arts. 3320, 3321, relating to filing accounts annually and other statutes and in taking, preserving, and presenting vouchers, and carelessness is apparent from face of report when filed, if there is any reasonable doubt as to whether administrator is entitled to credit, such doubt will be resolved against him.

2. **Executors and administrators** ⊂⊃506(3)— Statute relating to allowing administrator's claims contemplates that claims must be proven by same degree of written evidence required of another creditor (Rev. St. 1925, arts. 3297, 3514, 3515).

Rev. St. 1925, arts. 3297, 3514, 3515, relating to allowance of administrator's claims against estate, contemplates that claims must

be proven by same degree of written evidence which creditor would be required to produce if he had sued to establish his debt.

**3. Executors and administrators ⟞503—**
**Where statute requires sworn accounts and vouchers in writing, administrator should secure them, or excuse failure.**

Where statute requires sworn accounts and vouchers in writing, administrator should secure them or show some good and valid reason for his failure to do so.

**4. Executors and administrators ⟞506(1)—**
**Administrator, negligent in his accounts, to be entitled to credit for claims paid, must show claims were just.**

Where administrator is negligent in his accounts and in performing statutory duties, before he is entitled to credit for claims paid by him, proof must go beyond his own testimony, and by disinterested parties he must show that claims paid were just and that all legal offsets, payments, and credits were allowed.

**5. Executors and administrators ⟞506(1)—**
**To be entitled to credit for claims for expenses of administration, administrator has burden of proving expenses were necessary and reasonable (Rev. St. 1925, arts. 3414, 3415).**

Under Rev. St. 1925, arts. 3414, 3415, administrator, to be entitled to claims for expenses of administration, has burden of proving that expenses incurred were necessary and proper, and that amounts charged were fair and reasonable.

**6. Executors and administrators ⟞506(2)—**
**Where administrator failing to secure vouchers for all disbursements shows valid excuse, court may hear other competent evidence on claims.**

Where administrator may not have secured vouchers for all disbursements made by him and for which he claims credit, and shows valid excuse for his failure, court may hear evidence to prove payment and to show validity of several claims in particulars required by statute.

**7. Executors and administrators ⟞506(1)—**
**Administrator had burden of proving justice, necessity, value, and correctness of expenses incident to administration and debts paid by administrator.**

Administrator had burden of proving justice, necessity, value, and correctness of each claim and expense incident to administration and in payment of debts incurred by administrator contested in account for final settlement.

**8. Executors and administrators ⟞506(1)—**
**Where administrator administers estate carelessly, delegates powers and files no annual accounts, he has burden with reference to all matters questioned.**

Where administrator administers estate carelessly and negligently or delegates such powers to another, and in total disregard of statutory requirements fails to file annual account for more than five years, burden is on him with reference to all matters which are questioned by contestant.

**9. Executors and administrators ⟞87—Administrator cannot compromise debts and disputed matters without court's order (Rev. St. 1925, art. 3430).**

Administrator's right at common law to compromise debts and disputed matters without court's order has been taken away by Rev. St. 1925, art. 3430.

**10. Executors and administrators ⟞506(1)—**
**Administrator has burden of proving fairness of compromise settlement without court's order by disinterested testimony (Rev. St. 1925, art. 3430).**

In proceeding for final settlement, where administrator's action in making compromise or composition with creditors, without order from court to do so as required by Rev. St. 1925, art. 3430, has been challenged by contestants, administrator has burden of proving fairness and justness of transaction by disinterested testimony; his own unsupported testimony being generally insufficient.

**11. Executors and administrators ⟞281—**
**Where administrator has not complied with statutory requirements in handling estate, court should not exclude all evidence offered to justify his actions.**

Where administrator has not complied with statutory requirements in handling estate, trial court should not exclude all evidence offered by administrator on ground that his failure to comply with statutory requirements is such a dereliction of duty that he should be prohibited from seeking to vindicate his action.

**12. Executors and administrators ⟞281—Administrator should not be allowed credit for payment of claims barred by limitation.**

An administrator should not be allowed credit for any claims paid by him which were barred by limitation at that time.

**13. Executors and administrators ⟞511(3)—**
**Costs and expenses accruing through administrator's negligence should be taxed against him.**

Where administrator is negligent in performance of duties, and costs and expenses accrue thereby, they should be taxed against him on final settlement.

**14. Executors and administrators ⟞391—Administrator's selling property of estate and compromising claim for price without court order held illegal (Rev. St. 1925, art. 3430).**

Where administrator sold property belonging to estate and took purchasers' note and later compromised with purchasers for smaller amount without authority of court as required by Rev. St. 1925, art. 3430, transaction was illegal.

**15. Executors and administrators ⟞115—**
**Where administrator secured half interest in hotel belonging to estate through exchange with widow, in which he was paid money from estate, transaction was void.**

Where administrator secured half interest in hotel business belonging to estate through transaction with widow, in which he conveyed farm and in which he was paid money from estate, transaction was without authority of law and void.

---

⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**16. Executors and administrators ☞93(1), 115**—Administrator continuing business without authority from court and purchasing interest in it did so at his peril (Rev. St. 1925, art. 3427).

Under Rev. St. 1925, art. 3427, where administrator continued hotel business belonging to estate without applying to court for proper authority, purchased an interest in it and assumed authority of conducting it, he did so at his peril.

**17. Executors and administrators ☞93(1)**—Under statute widow had duty to apply for order regarding continuing hotel business belonging to estate (Rev. St. 1925, art. 3428).

Rev. St. 1925, art. 3428, providing that any person interested in estate, after proper citation, could obtain order of court controlling action of administrator in regard to business, imposed on widow duty to apply for such an order regarding continuance of hotel business.

**18. Executors and administrators ☞504(4)**—Administrator should be credited with sums advanced to widow without court order and used by her not in excess of her community interest (Rev. St. 1925, arts. 3476–3484).

Where administrator advanced sums to widow without applying to court for allowances under Rev. St. 1925, arts. 3476–3484, administrator should be credited with all sums advanced to her and used by her not in excess of her community interest, since she would be estopped from insisting that payments made to her and not in excess of her undivided interest were illegally made and should be charged against administrator.

**19. Executors and administrators ☞506(3)**—In proceeding for final settlement, where administrator was not charged with positive fraud, court erred in permitting him to testify that he acted in good faith.

In proceeding for final settlement, court erred in permitting administrator to testify that he acted in good faith in performance of his duty, where he was not charged with positive fraud but had flagrantly violated his statutory duties.

**20. Executors and administrators ☞500**—Administrator, by his conduct of affairs of estate, forfeited right to commissions.

Administrator, by negligent manner of handling estate and by violating statutory duties, forfeited right to commissions.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Proceeding in county court by Mrs. Myrtle Scott and others for final settlement of the account of D. P. Taylor, as administrator of the estate of Frank B. Taylor. On appeal to the district court where case was tried de novo, judgment was rendered against plaintiffs, and they appeal. Reversed and remanded.

Cox & Fulton, of Wichita Falls, for appellants.

Bullington, Boone, Humphrey & King, of Wichita Falls, for appellee.

HALL, C. J. Frank B. Taylor, the first husband of Mrs. Myrtle Scott, one of the appellants, died in January, 1907, leaving his wife and three minor children surviving him. The wife waived her right to be appointed administratrix of the estate in favor of D. P. Taylor, the brother of Frank B. Taylor. D. P. Taylor was duly appointed administrator on February 7, 1920, and gave bond in the sum of $60,000 which was approved by the probate court. He filed an inventory and appraisement of the estate, which showed assets to the amount of $40,223.31 and liabilities aggregating $17,035.45. It does not appear that D. P. Taylor as administrator ever filed an annual account, nor did he file a final account until this proceeding was instituted requiring him to do so. On February 1, 1926, he filed his final amended account, which was also amended on April 28, 1926, at which time it was heard by the probate court.

The appellants herein, Mrs. Myrtle Scott, formerly Mrs. Myrtle Taylor, joined by her three children, contested the report filed by D. P. Taylor for final settlement. The objections to the final report were filed in writing and may be briefly summarized as follows: (a) The report does not show all the assets of the estate. (b) It shows that administrator had paid out large sums of money for indebtedness which did not appear in the inventory and appraisement, and did not show a proper disposition of all the leases and other properties owned by Frank B. Taylor at the time of his death. (c) The item showing the sale of the Marion Hotel did not show any authority from the county court authorizing, directing, or permitting the same to be sold, and did not show that it was sold for a just and fair price. (d) Because none of the payments and disbursements claimed to have been made by the administrator were authorized by the court, were not made upon sworn accounts, and no itemized accounts were ever filed in the probate court, nor were any of such payments supported by proper vouchers as required by law. (e) The expense account incident to conducting the Marion Hotel was excessive and the items were not supported by proper vouchers, and the report shows that many of such items were for other purposes than hotel expense. (f) No authority was shown for the expense account of $923.83 incident to the Scott street property, and no vouchers were exhibited to support the claim for credit. (g) The item of $12,991.05, alleged to have been transferred to Frank B. Taylor's personal account and paid out, is objectionable because there is no authority in law for handling the account in that manner, and shows to have been a mere juggling of figures transferring funds from one bank to another. (h) The items claiming payment of interest in various amounts to the City National Bank are not

supported by vouchers, and such payments are not shown to have been authorized by the court. (i) Certain items showing payments in lump sums were not specifically set out, but it appears these objections were met by an amended report. (j) The contestants further allege that the administrator had failed to make any report for more than three years, notwithstanding the fact that contestants had requested and begged for such a report and for final settlement of the estate; that the administrator had refused to make any annual report or any final report until he was cited by the county court to appear and show cause why he should not be removed and held to be in contempt for his refusal to file such reports.

The record shows that the case was tried in the county court and appealed to the district court, where it was tried de novo before a jury on special issues. The effect of the jury's findings is as follows: (1) D. P. Taylor has accounted for all the proceeds coming into his hands in the payment of bona fide accounts owing by said estate. (2) The reasonable market value of a one-half interest in the Marion Hotel property owned by said estate on January 15, 1921, was $3,750. (3) The $5,000 due the City National Bank, which was merged into the indebtedness of D. P. Taylor for approximately $31,000, was an obligation of D. P. Taylor and the estate of Frank B. Taylor jointly. (4) The administrator acted for the best interest of the estate in making settlement with Mashburn and others to reduce the purchase price of the Marion Hotel property from $10,000 to $6,000. (5) Mashburn and his associates were insolvent and not able to pay the indebtedness. (6) D. P. Taylor did not owe Frank B. Taylor any money at the time of the latter's death. (7) It was necessary for the contestants to employ an expert accountant to audit the administrator's books, and $612 was a reasonable fee for the accountant's services. (8) Mrs. Myrtle Taylor (Scott) received money on checks charged against her by the administrator, which checks she did not indorse.

After the verdict was returned, the court rendered judgment against the appellants, and, in addition to the findings by the jury, the court found that the administrator's account as presented was fair, just, and correct, and it was in all things approved. The judgment discharges D. P. Taylor as administrator and finally closes the estate. It is further recited that D. P. Taylor is discharged from any and all claims which the heirs of Frank B. Taylor may have against him on account of his administration of the estate, except as to the item of $612 paid the auditor, and in all things else it is decreed that the appellants take nothing.

Revised Statutes, arts. 3320 and 3321, require every administrator to file a verified itemized account annually, with the probate court, showing the condition of the estate he represents, and they further require him to file his final account and make final settlement within three years from the granting of letters, unless that time has, for good cause, been extended by the court.

[1] Where an administrator, as in this case, has been careless and negligent in his accounts and in performing the duties required by the statutes, such as filing his annual report, taking, preserving, and presenting vouchers, and in closing the estate at the end of three years from the date of his appointment, and when such carelessness is apparent from the face of the report when filed and the report is so obscure and confused that the services of an expert accountant are required to audit it, the rule is that if there is any reasonable doubt as to whether the administrator is entitled to a credit, such doubt will be resolved against him.

[2-4] When the administrator has filed no annual account and no vouchers and the court has made no orders nor allowed any credits, the burden is upon the administrator to show not only that he has paid the claim, but that it is just, legal, and correct. If the claim is one which existed against his decedent before the latter's death, the proof must be made in accordance with the requirements of the Revised Statutes, arts. 3514 and 3515. These articles prescribe that before the administrator shall allow a claim and before the county judge can legally approve it, it must be accompanied by an affidavit made by the owner or some one cognizant of the facts that the claim is just and that all legal offsets, payments, and credits have been allowed. Article 3515 further provides that where a claim is lost or destroyed the proof must be by disinterested testimony taken in open court or by deposition. In other words, the statute contemplates that the claims must be proven by the same degree of written evidence which the creditor would be required to produce if he had sued to establish his debt. R. S. art. 3297, and title 54, cc. 18 and 19; 24 C. J. 1020, note 3. So where the statute requires sworn accounts and vouchers in writing, the administrator should secure them or show some good and valid reason for his failure to do so. Dent v. Harris (Tex. Civ. App.) 255 S. W. 221; Bell v. Bowles (Tex. Civ. App.) 258 S. W. 892.

In discussing similar statutes of which the two articles under discussion are amendments, the Supreme Court in Converse & Co. v. Sorley, 39 Tex. 515, 528, said:

"This statute prescribes the only mode of establishing a moneyed demand against an estate of a deceased person, and is too plain and definite to require explanation or interpretation, and is a total prohibition against an administrator or executor, or the probate court from recognizing or paying any claim for money until the same has been properly proven up or sworn to as the law directs. The purpose of

the statute is most manifest, to prohibit the representative of an estate from allowing or paying any claim until the holder thereof shall swear to the justness of the same, and also swear that no part had been settled or paid, and thereby protect estates from fraud and imposition. The objects and wisdom of this statute have been fully recognized and enforced by repeated decisions of this court. [Citing authorities.] It follows most clearly that as the statute is direct and mandatory, and neither the administrator nor the probate court has the power or authority to settle any such claim without authentication as prescribed by statute, any attempt to do so would be in direct violation of law, and must of necessity be void. Indeed, such a direct and palpable violation of so plain and notorious a provision of the statute by the creditor, administrator, and the court, and particularly under the circumstances surrounding this case, would raise a sufficiently strong presumption of fraud and combination to vitiate the whole transaction."

In Nelson v. Bridge, 98 Tex. 523, 86 S. W. 7, the Supreme Court, in discussing the effect of the statutes relating to the estates of decedents, said:

"In none of them, so far as we have found, is there any suggestion that action taken contrary to them shall be void, except in articles 2072 and 2073 [articles 3514 and 3515], in which the approval or allowance of claims without affidavit is prohibited, and, in this instance, the statute expressly declares, what would not otherwise follow, that such an allowance by the court should be of no effect."

It follows from what we have said that before the administrator would be entitled to credit, in this contest for any claims paid by him, that the proof must go beyond his own testimony, and by disinterested parties he must show that the claims which he has paid were just and that all legal offsets, payments, and credits were allowed.

[5, 6] With reference to the claims for expenses of administration, the burden of proof is upon him to show that the expenses incurred were necessary and proper and that the amounts charged are fair and reasonable. R. S. arts. 3414, 3415; 6 Stand. Proc. 605, 606. In a contest of this character, it seems that where the administrator may not have secured vouchers for all disbursements made by him, and for which he claims credit, and shows a valid excuse for his failure, the court may nevertheless hear other competent evidence to prove payment and to show the validity of the several claims in the particulars required by the statute. His failure to have vouchers may be satisfactorily explained. 24 C. J. 1020, 1021; Stonebraker v. Friar, 70 Tex. 202, 7 S. W. 799; Jones v. Parker, 67 Tex. 76, 3 S. W. 222; Simpkins, Administration of Estates in Texas (2d Ed.) p. 446; Dawson v. Jenkins, 199 Ky. 420, 251 S. W. 205.

[7] In the matter of claims and expenses incident to the administration and in the payment of debts incurred by the administrator, the burden of proving justice, necessity, value, and correctness rests upon the administrator, and this rule applies to each item in the account for final settlement which had been contested by the appellants. Coats et al. v. Bain et al. (Tex. Civ. App.) 258 S. W. 897; In re Fisher's Estate, 124 Misc. Rep. 836, 209 N. Y. S. 300; 24 C. J. pp. 1017, 1018, §§ 2472, 2475.

[8] The record shows that the administrator gave very little if any personal attention to the management of the affairs of the estate, but rather committed such matters to his son-in-law. If the administrator requires the authentication and proof of claims in accordance with the provisions of the statutes, and takes vouchers showing payments and files his annual accounts and secures orders of court authorizing him to act, then the presumption of regularity and legality is generally in favor of all such transactions, and the burden is upon the contestant to show the contrary, but when he administers the estate carelessly and negligently, or delegates such powers to another, and, in total disregard of the statutory requirements, fails to file an annual account for more than five years, then, according to the weight of authority, he has the laboring oar, and generally the burden is upon him with reference to all matters which are questioned by the contestant. 6 Stand. Proc. 605, 606, and authorities cited.

[9] What has been said with reference to the proof and payment of claims and of the expenses of administration, applies also to the action of the administrator with reference to any matter arising under R. S. art. 3430, which is as follows:

"When an executor or administrator deems it for the interest of the estate to purchase or exchange property, or to take any claims or property for the use and benefit of the estate in payment of any debt due the estate, or to compound bad or doubtful debts due the estate, or to make compromises or settlements in relation to property or claims in dispute or litigation, he shall present an application in writing to the county court at a regular term thereof, representing the facts; and, if the court is satisfied that it will be to the interest of the estate to grant the same, an order shall be entered showing the authority granted."

At common law, an administrator could, without the court's order, compromise debts and disputed matters, but this right to do so is done away by this statute. Jones v. Gilliam (Tex. Civ. App.) 199 S. W. 694; Browne v. Fidelity & Deposit Co., 98 Tex. 55, 80 S. W. 594.

[10] The terms of the statute leave nothing to the administrator's discretion. The power to act is vested solely in the probate court. In a proceeding for final settlement where the administrator's action in making a compromise or composition with creditors, without an order from the court to do so, has been

challenged by the contestants, the presumptions are against him, and he has the burden of proving the fairness and justness of the transaction by disinterested testimony. Having acted in violation of express statutory requirement, it is a just rule which imposes upon him the burden of satisfactorily explaining his unauthorized acts by competent and adequate proof. His own unsupported testimony to that end is generally insufficient to exculpate him. James v. Craighead (Tex. Civ. App.) 69 S. W. 241; Chifflet v. Willis, 74 Tex. 245, 11 S. W. 1105; Coates v. Bain, supra; McGary v. Lamb, 3 Tex. 342; Hall v. Hall (Tenn.) 59 S. W. 203; Nicholson v. Nicholson, 59 Tex. Civ. App. 357, 125 S. W. 965; Dawson v. Jenkins, supra.

The foregoing general principles, we believe, should control in the trial of this contest, and are announced without specific reference to any particular assignment of error urged by appellants.

[11] We think the doctrines announced are fairly deducible from the authorities hereinbefore cited, and are warranted by the language of the statutes and the following cases, but we do not believe that they require the trial court to exclude all evidence offered by the administrator upon the ground that his failure to comply with the requirements of the statute is such a dereliction of duty that he should be prohibited from seeking to vindicate his action. Richardson v. Kennedy, 74 Tex. 507, 12 S. W. 219; Blackwood v. Blackwood's Estate, 92 Tex. 478, 49 S. W. 1045; Lanier v. Taylor (Tex. Civ. App.) 41 S. W. 516; McShan v. Lewis, 33 Tex. Civ. App. 253, 76 S. W. 646; Whitmire v. Powell (Tex. Civ. App.) 117 S. W. 433; Cameron v. Morrison, 83 Tex. 14, 18 S. W. 422; Anderson v. Cochran, 93 Tex. 583, 57 S. W. 29; Wygal v. Woodlief's Heirs, 76 Tex. 604, 13 S. W. 569; Butler v. Fechner (Tex. Civ. App.) 200 S. W. 1126.

[12, 13] Notwithstanding the administrator's dereliction of statutory duty, we believe the principles of equity should permit him to assume the burden and, with competent proof if he has it, show that the estate and those entitled to it have not been injured as a result thereof. An administrator of course should not be allowed credit for any claims paid by him which were barred by limitation at that time. Hefflefinger v. George, 14 Tex. 569; Sabrinos v. Chamberlain, 76 Tex. 624, 13 S. W. 634. The rule seems to be further settled that where the administrator is negligent in the performance of his duties and costs and expenses accrue thereby, they should be taxed against him on final settlement. Crawford v. Hord, 40 Tex. Civ. App. 352, 89 S. W. 1098; Thomas v. Hawpe, 35 Tex. Civ. App. 311, 80 S. W. 129.

In passing upon the specific assignments of error, we assume that the administrator took over the entire estate and that the property in his hands was the community estate of Frank Taylor and his wife. The record is not clear upon this point. Proceeding upon this assumption, we think that the proof was insufficient to entitle the administrator to credit for the $5,000 note due the bank. The claim had not been properly proven by the bank, and the evidence does not definitely show the origin of the note. Upon another trial this should be done. We are also of the opinion that he was not entitled to credit for $446.80 which his son-in-law paid upon an oil lease upon advice of one Ardis. Richardson v. Kennedy, supra.

While article 3427 authorizes an administrator to carry on certain kinds of business in which his decedent was engaged, or was a partner, at the time of his death, the rule is that the death of one partner dissolves the firm, and we doubt the authority of this administrator to contribute the funds of the estate toward the continuance of a mining partnership, especially in the absence of express authority from the probate court so to do. Altgelt v. Sullivan (Tex. Civ. App.) 79 S. W. 333. We cannot, however, determine this question finally, since the record gives us no information regarding the terms and conditions of the partnership agreement under which the oil firm existed. In view of another trial, we suggest that the rights of the parties may be measured by the rules stated in 40 L. R. A. (N. S.) 217, note (c); 222, note 4 (a), or 230, note 3.

It further appears that at the time of his death Frank Taylor was the owner of a leasehold interest in the Marion Hotel, in Wichita Falls, and owned the furniture and personal property which was used in conducting the hotel business. After his death, the administrator by some sort of an agreement with the widow acquired an undivided one-half interest in the hotel property, and, as suggested by appellant, "formed a partnership with himself as an individual and as administrator for the purpose of continuing the business."

[14, 15] There is very little contention with reference to the expenses incident to conducting the hotel, but it appears that the administrator made a net profit of $20,000 the first year. Later, without any order of the court authorizing him, he sold the furniture and other personal property in the hotel, taking the note of the purchasers for $10,000 in payment, one-half of which he admits belonged to the estate. Later he compromised with the purchasers for $6,000 and gave the estate credit for only one-half of this sum. This proceeding, being without authority of the court, was illegal. It was shown that one reason he had for compromising a debt of $10,000 for $6,000 was that he might use the $6,000 note as collateral security for a loan to him individually by the City National Bank. It further appears that he secured a one-half interest in the hotel business through a transaction with the widow, in which he conveyed

to her a farm in Wichita county, and in which he was paid $1,700 in money from the estate. We think this transaction is without any authority of law and void. Dealy v. Shepherd, 54 Tex. Civ. App. 80, 116 S. W. 638; Goldstein v. Susholtz, 46 Tex. Civ. App. 582, 105 S. W. 219.

[16] Revised Statutes, art. 3427, provides that the administrator may carry on a business belonging to the estate where its sale is not required as one for the payment of debts, or he may cause the same to be carried on if it shall appear to be for the best interest of the estate to do so. This article further provides that he shall consider the condition of the estate, the necessity that may exist for future sale, of the property for the payment of claims, but prohibits him from extending the time of the renting of any such property beyond what may be consistent with the speedy settlement of the estate. If it appeared to him that the continuance of the business was to the best interests of the estate, he should have applied to the court for the proper authority. Failing in this, and having purchased an interest in it, and assumed the authority of conducting it, he did so at his peril.

[17] Revised Statutes, art. 3428, provides that any person interested in the estate, after proper citation, could, at a regular term of the court, upon good cause shown, obtain an order of the court controlling the action of the administrator in regard to such business. This article imposed upon the widow the duty to apply for such an order, and it may be that her failure to make application and by her consent for the administrator to continue the hotel business, and her acceptance of her share of the profits derived therefrom, she would be estopped from claiming anything by reason of such facts, provided, of course, the estoppel was properly pleaded and proven. No such estoppel, however, could be urged against the children of the decedent.

In an instructive note appended to Swaine v. Hemphill, 40 L. R. A. (N. S.) 201, we find this language:

"It is a general rule, widely recognized, that it is not within the ordinary duties of an executor, administrator, testamentary trustee or guardian, to carry on a trade or business on behalf of the estate he represents, unless expressly empowered to do so by will, or by the commands of articles of co-partnership, except speedily to wind up the business in order to settle the estate. If a personal representative or guardian does carry on such a trade or business, he becames answerable to those interested in the estate for all losses sustained while the profits, if any, belong to the estate. * * * In the absence of authority from a court duly empowered, an executor [or] administrator, * * * who carries on the business belonging to an estate without being specially authorized * * * is individually liable for all the debts contracted by him while engaged in such trade or business. In some cases debts contracted, as well as the expenses of conducting the busi-ness, have been allowed from the estate, especially where the business resulted in a profit. Where a trade or business is carried on without express authority, those beneficially interested in the estate may, at their election, hold the personal representative answerable for the value of the assets embarked in the trade, together with interest thereon; or they may claim the profits of the business; or they may charge the personal representative with the rental of real estate used in carrying on the business."

The rule is further announced, however, in the same note (page 203). The heirs of those beneficially interested in an estate may estop themselves from questioning the conduct of a personal representative in carrying on a trade or business or from holding him answerable for resulting losses, where the business was carried on at their request or solicitation, or with their knowledge, no objections to his conduct being made by them. His liability for losses sustained is further discussed in the same note, on page 216, and authorities are cited which in our opinion, under proper pleadings and proof, would entitle the minors to hold him responsible for any losses which resulted by reason of deterioration in the value of the property after the expiration of the time when it became his duty to dispose of it and settle the affairs of the estate.

From some statements found in the record, we may reasonably infer that the widow was appointed guardian of the persons of her minor children, but she has not been made a party to this proceeding in her fiduciary capacity, and we therefore do not undertake to determine the rights of the children, nor her rights as their guardian and representative, because those questions are not presented to us, nor do the pleadings of the parties, nor the record before us, require their consideration.

R. S. art. 3553, is:

"No sale of any property of an estate shall be made by an executor or administrator without an order of the court authorizing the sale."

Based upon this statute, the appellant insists that the administrator should be charged with one-half of the $10,000, for which he sold the hotel interests originally. Having failed to avail himself of the protection which would have been afforded him by an order of the probate court, authorizing him to sell, we think the court should disregard entirely his unauthorized contract, and that his liability should be determined upon different considerations. If the widow assented to the sale, it may be that she would be estopped from claiming more than her one-fourth interest in the $10,000, but we think it is clear that neither the court nor the children were bound up by the agreed price of $10,000 or the $6,000 accepted in the compromise.

If the widow is not estopped, then the court.

should have excluded all evidence with reference to this transaction and charged the administrator with one-half of the value of the property at the time it should have been sold, less the $3,000 already paid by the administrator. If facts are alleged and proven showing that the widow assented to the transaction or accepted its benefits, then she would probably be denied the right to recover any amount for herself, but there is nothing apparent in the record now before us which would defeat the right of her children to reimbursement for any loss sustained.

The next contention of the appellants is that where the administrator advanced money to the widow from time to time without authority from the court, and without complying with the statute regulating such procedure, he should be charged with all sums so paid. We think the proposition is too broad and cannot assent to it as stated. Under the provisions of R. S. arts. 3476 to 3484, inclusive, it became the duty of the administrator to apply to the court and have allowances made for the widow and minor children sufficient for their support for one year, but he has also proceeded in disregard of this statutory duty, and it is now too late for him to claim credit for such sums as might have been allowed if he had acted promptly under the provisions of the statute.

[18] In view of the fact that the widow was, as a matter of law, entitled to one-half of the community estate remaining after the payment of debts and expenses of administering properly chargeable against the community, we think upon another trial the administrator should be credited with all sums advanced to her and used by her not in excess of her community interest, and she would be estopped from insisting that payments made to her and not in excess of her undivided interest were illegally made and should be charged against the administrator. Such, however, is not the rule with reference to sums advanced either to the widow or to the minors personally for their benefit.

This question was decided in the early case of Mitchell v. Harrison, 32 Tex. 331, in which Morrill, C. J., said:

"As the duties, powers and liabilities of administrators of the estates of deceased persons are fully and clearly designated by the statutes a resort to the statutes without any other or further labor, is all that is required in deciding the case now before us. The collection and preservation of the property, the payment of debts of the deceased, and the rendition of the property to those entitled to receive it, are the prominent duties. The care of the minor children forms no part of an administrator's duties, except so far as to see that the property required to be set aside for the family of the deceased is not taken into the possession of the administrator adversely to those entitled to receive it. In this case the administrator, in the settlement of his administration, set up a claim against the estate as guardian of the children of the intestate, without pretending to have been a guardian. And as it is not pretended that the administrator did what the Chief Justice was required to do by article 1305, Pasch. Dig., viz., set aside to the children certain property of the estate for their support, we see no error in the court in dismissing the petition."

This case is cited in the note to Fletcher v. American Trust Co., 78 Am. St. Rep. 174, upon the right of an executor to claim credit for sums advanced for the support of a decedent's family, in which the rule is announced:

"Not only has an executor no authority to maintain the decedent's family out of the assets of the estate, but he cannot in the settlement of his accounts, as such, be allowed a credit for any expenses incurred for that purpose. * * * Hence, credit will not be given to an administrator for boarding and clothing furnished the minor children, of the decedent. * * * Such expenses are not properly claims against the estate, nor a part of the expenses of administering it. * * * This rule applies both to the widow and children, and to any other person however nearly connected or dependent upon the estate."

If it should appear that the administrator had charge of the entire community estate, of course this rule does not apply so as to deny him credit for any sums advanced to the widow and not in excess of her one-half interest, and, while it may seem to be a harsh rule, the authorities, so far as we are able to find, are uniform in denying him the right of credit for any sums advanced to the children, when he had not been appointed their guardian, and when after such advancements the funds are insufficient to pay the debts. We find, however, that the rule is relaxed in some cases where the estate is solvent, where the debts have all been paid, and where the children had no other property from which they could attain the funds necessary for their support, maintenance, and education.

It may be upon another trial that the facts will be sufficient to authorize the court to credit the administrator with all sums which he can show were advanced and actually expended and used for the support, maintenance, and education of the children, during a reasonable time, after it became his duty to file his final account and wind up the affairs of the estate.

In submitting the issues to the jury, the court should have submitted a separate issue upon each of the contested items; such issues as, "Has D. P. Taylor accounted for all the proceeds coming into his hands in the payment of bona fide accounts owing by said estate?" are manifestly improper.

[19] The appellants further insist that the court erred in permitting the administrator to testify that he acted in good faith in the performance of his duties. We think this objection should have been sustained. He was not charged with positive fraud, and it is dif-

ficult to understand how an administrator who has flagrantly violated his statutory duty can consistently claim to have acted in good faith. His good or bad faith is not an issue in the pleadings before us.

[20] By cross-assignment, the administrator insists that he is entitled to commissions; but his conduct of the affairs of the estate has been such that he has forfeited that right.

For the reasons stated, the judgment is reversed and the cause is remanded.